1  TROUTMAN PEPPER LOCKE LLP
   Daniel A. Solitro (SBN: 243908)
2  daniel.solitro@troutman.com
   350 South Grand Avenue, Suite 3400
3  Los Angeles, CA 90071
   Telephone: (213) 687-6747
4  Fax: (213) 928-9850
5
6  Attorney for Defendant
   ZURICH AMERICAN INSURANCE COMPANY
7
8              UNITED STATES DISTRICT COURT
9     FOR THE CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

10  GUESS?, INC., a corporation; GUESS ITALIA    )  Case No. 2:25-cv-10727
    S.R.L., a limited liability company; and GUESS )
11  EUROPE SAGL, a limited liability company,     )  [Removed From Los Angeles Superior Court
                                 Plaintiffs,       )  Case No: 25STCV29175]
12                                                 )
                                                   )
13              v.                                  )
                                                   )
14  ZURICH AMERICAN INSURANCE COMPANY,            )  **DECLARATION OF CARLA JAAP IN**
    a corporation; and DOES 1 through 100, inclusive, )  **SUPPORT OF DEFENDANT ZURICH**
15                                 Defendants.      )  **AMERICAN INSURANCE**
                                                   )  **COMPANY'S  NOTICE OF REMOVAL**
16                                                 )
                                                   )  Complaint filed: October 6, 2025
17                                                 )  Complaint served: October 9, 2025
                                                   )
18  ─────────────────────────────────────────────)

19
20
21
22
23
24
25
26
27
28

_Troutman Pepper Locke LLP_
_350 South Grand Avenue, Suite 3400_
_Los Angeles, CA  90071_

1

Pursuant to 28 U.S.C. § 1746, I, Carla Jaap, hereby testify and declare as follows:

1.      I am a Team Lead/Legal Collections Specialist II, Financial Operations with Defendant Zurich American Insurance Company ("Zurich").  I am authorized to execute this Declaration on behalf of Zurich in support of its Notice of Removal.

2.      As part of my job duties, I oversee and am therefore familiar with certain disputes between the parties, namely the amounts that Zurich is seeking to recover from Plaintiff Guess?, Inc. ("Guess") in a separate arbitration currently pending before the American Arbitration Association.

3.      I have personal knowledge of the matters set forth in this Declaration and, if called as a witness in this action, can and would testify competently thereto.

4.      Zurich and its affiliates provided general liability insurance to Guess for five policy years spanning from May 1, 2018 to May 1, 2023 under two relevant sets of insurance policies—(a) the international insurance policies with the prefix numbered ZE 5574490, and (b) the domestic insurance policies with the prefix numbered GLO 0152759.

5.      There is a dispute between Zurich and Guess as to whether the insurance claims known as the Griffin/Ronn claims and UMG claims are covered by the international insurance policies or the domestic insurance policies.  Among other reasons, which policies apply matters because the international insurance policies do not have large deductible obligations, and the domestic insurance policies do have large deductible obligations.

6.      In this lawsuit, Guess contends that the Griffin/Ronn and UMG claims are covered by the international insurance policies—not the domestic insurance policies—such that Guess does not owe Zurich any deductibles for the claims.  (*See* Compl. at ¶¶ 8, 65(a), 65(b).)

7.      Zurich contests Guess's position, and Zurich previously initiated a separate arbitration against Guess contending that the Griffin/Ronn and UMG claims are covered by the domestic insurance policies, such that Guess now owes Zurich $1,229,250 in principal for unpaid dedutibles, plus accrued interest.

8.      Zurich filed its arbitration demand against Guess two months ago on September 3, 2025.  A copy of Zurich's arbitration demand is attached as Exhibit A.  The demand seeks the $1,229,250 in principal, plus interest, from Guess.  A copy of Guess's answer to the arbitration demand

Troutman Pepper Locke LLP
350 South Grand Avenue, Suite 3400
Los Angeles, CA  90071

2

is attached as Exhibit B. In the answer, Guess stated that it would file this "separate litigation" to adjudicate the parties' disputes.

9.     Given the above, the amount in controversy between Zurich and Guess for the Griffin/Ronn claims and UMG claims at issue in this lawsuit exceeds $75,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 7th day of November, 2025 at Crossville, Tennessee.

_____
Carla Jaap

Troutman Pepper Locke LLP
350 South Grand Avenue, Suite 3400
Los Angeles, CA  90071

DECLARATION OF CARLA JAAP IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

# EXHIBIT A

**In the Matter of the Arbitration Between:**

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN ZURICH INSURANCE COMPANY, | ) ) ) | |
| | ) | American Arbitration Association |
| Claimants, | ) | |
| | ) | Commercial Arbitration Rules |
| and | ) ) | |
| GUESS?, INC., | ) ) | |
| Respondent. | ) ) | |

## <u>ARBITRATION DEMAND</u>

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Guess?, Inc.
Attn: Todd Marumoto
1444 South Alameda Street
Los Angeles, CA 90021

**VIA ELECTRONIC MAIL**

Matthew O'Hanlon
David Schack
Barnes & Thornburg LLP
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Matthew.Ohanlon@btlaw.com
David.Schack@btlaw.com

    **PLEASE TAKE NOTICE** that claimants Zurich American Insurance Company and American Zurich Insurance Company (collectively "Zurich"), by their attorneys, Troutman Pepper Locke LLP, hereby demand arbitration of the disputes that have arisen between Zurich and Guess?, Inc. ("Guess"). Through this demand, Zurich seeks to recover $1,229,250.00 in principal, plus interest, arising out of Guess's obligations under agreements entered into between Zurich and Guess. Zurich has demanded payment of the outstanding amounts from Guess, and Guess has failed to timely remit payment.

    The parties' dispute concerns the Paid Deductible and Paid Loss Retrospective Agreements and related Specifications entered into between Zurich and Guess for five relevant policy years

spanning from May 1, 2018 through May 1, 2023 (the "Deductible Agreements," Ex. 1), along with the associated insurance policies and endorsements.

The Deductible Agreements contain arbitration provisions providing for arbitration of all disputes "arising out of the interpretation, performance or alleged breach" of the Deductible Agreements. (*See* Ex. 1 at Z000007–08, 31–32, 49–50.) The Deductible Agreements set forth procedures and protocols for the parties' arbitration, including that such arbitration shall take place in Los Angeles, California and California law shall apply. (*Id.*) The arbitration is to be administered by the American Arbitration Association under its Commercial Arbitration Rules. (*Id.*)

In support of its arbitration demand, Zurich states the following:

## CLAIM FOR PAYMENT OF OUTSTANDING DEDUCTIBLE INVOICES

1.    Guess is a large clothing company and lifestyle brand that offers a full range of denim, apparel, and accessories for women, men, and children.

2.    Relevant here, Zurich provided general liability insurance to Guess for the five policy years spanning from May 1, 2018 through May 1, 2023.

3.    For this general liability insurance, the parties agreed to a loss sensitive insurance program through which Guess agreed to assume responsibility for a portion of its insurance risk. Specifically, under the Deductible Agreements and insurance policies, Guess assumed a large deductible obligation of $150,000. The Deductible Agreements provide that Guess is responsible for the first $150,000 of loss incurred for each occurrence, claim, offense, accident, act, error or omission or other such similar event as defined or used in the insurance policies, subject to certain agreed conditions and factors. (*Id.* at Z000010, 18, 34, 52, 60.)

2

4.      Zurich has fully complied with its obligations under the Deductible Agreements. Zurich has paid claims and issued corresponding deductible invoices to Guess.

5.      Guess has failed to comply with its obligations under the Deductible Agreements. Without excuse or justification, Guess has failed to pay amounts owed to Zurich under the Deductible Agreements for unpaid deductibles.

6.      Following is a summary of the monies Guess currently owes Zurich for unpaid deductibles:

| Invoice Number | Invoice Due Date | Claim Number | Policy Period | Deductible Due | Amount Outstanding |
|---|---|---|---|---|---|
| RMI010000031206 | 5/7/2025 | 9690566197 | 5/1/2018 | $ 12,250.00 | $ 939,250.00 |
| | | 9690576059 | 5/1/2019 | $ 27,000.00 | |
| | | 9690576072 | 5/1/2020 | $ 150,000.00 | |
| | | 9690585662 | 5/1/2020 | $ 150,000.00 | |
| | | 9690576073 | 5/1/2021 | $ 150,000.00 | |
| | | 9690585661 | 5/1/2021 | $ 150,000.00 | |
| | | 9690566163 | 5/1/2022 | $ 150,000.00 | |
| | | 9690585660 | 5/1/2022 | $ 150,000.00 | |
| RMI010000031283 | 5/22/2025 | 9690546022 | 5/1/2022 | $ 150,000.00 | $ 290,000.00 |
| | | 9690585658 | 5/1/2022 | $ 115,000.00 | |
| | | 9690585659 | 5/1/2022 | $ 25,000.00 | |
| | | | **TOTAL** | | **$ 1,229,250.00** |

Copies of the outstanding invoices are attached as Exhibit 2. Guess's deductible obligations may increase if additional amounts are incurred for the claims.

7.      Apart from and in addition to the principal amount, Guess owes Zurich for accrued interest due on the unpaid invoices. Under the governing California law, prejudgment interest is mandatory and runs at the rate of ten percent (10%) per annum from the invoice due date. Guess currently owes Zurich more than $38,000 in accrued interest on the unpaid invoices, which interest will continue to accrue each day.

8.    Zurich initiates this arbitration to recover the $1,229,250, plus interest, currently due under the Deductible Agreements.  Zurich is entitled to the full amount of this unpaid principal, plus interest, and such other relief as the Panel of arbitrators may determine is appropriate.

## CONCLUSION

At the final hearing, Zurich will present evidence supporting its claim, and Zurich will ask the Panel to enter an award requiring Guess to pay Zurich the full $1,229,250.00 in principal, plus interest, that is outstanding for the unpaid deductible invoices.

Dated:  September 3, 2025

ZURICH AMERICAN INSURANCE
COMPANY and AMERICAN ZURICH
INSURANCE COMPANY


By:    /s/ *Julie L. Young*
            One of Their Attorneys

Julie Young
Brandon Calderón
TROUTMAN PEPPER LOCKE LLP
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
Phone:  (312) 443-0254
Fax:     (312) 896-6569
Email:  Julie.Young@troutman.com
            Brandon.Calderon@troutman.com

# Exhibit 1

## PAID DEDUCTIBLE AND PAID LOSS RETROSPECTIVE AGREEMENT

This Agreement, effective on the 1st day of May, 2018, between Guess?, Inc. (referred to as "You" and "Your") and Zurich American Insurance Company and/or American Zurich Insurance Company (collectively referred to as "We," "Us" and "Our").

## TERMS AND CONDITIONS

### A. Purpose of the Agreement

The purpose of this Agreement is to outline (a) the scope, description and structure of the Paid Deductible and the Paid Loss Retrospective Premium (collectively referred to as the "Program") You and We have entered into and (b) the duties and obligations of each party with respect to this Program.

### B. Scope of the Agreement

The Policy(ies) for each line of business issued by the applicable insurance company, including all endorsements, extensions, renewals and/or rewrites, subject to this Agreement are stated in the Specifications.

This Agreement has two parts: Terms and Conditions and Specifications. Each part of the Agreement will be signed by both parties. The Agreement term is continuous and will be amended for each Program change by adding new Specifications, effective on the date of the change, and signed by both parties.

This Agreement governs the structure and operation of and the duties and obligations of each party to this Program. By executing this agreement, you acknowledge that we provided you with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and that the terms of this Agreement reflect the final agreement to You and Us relating to the resolution of disputes under this Agreement.

### C. Program Description

Under the Program, at Your request, a Third Party Administrator ("TPA") has been selected to handle and pay the claims presented in accordance with the provisions of the Policy(ies). You will be billed for the claim payments within the Loss Limit(s), plus related expenses and assessments, as stated in the Specifications. You agree to and shall remit to Us all amounts when due, as stated in the Specifications. A Loss Fund will be required so that funds are available to pay Your obligations within the Loss Limit(s). The amount and operation of the Loss Fund are stated in the Specifications.

The Earned Retrospective Premium is calculated and adjusted based on Your loss experience at specified loss valuation dates after the expiration of the Policy(ies) until such time as, if applicable, the Combined Aggregate amount is reached.

As a consequence of providing You with a risk financing arrangement under this Program You, We assume a financial risk for which We may require Collateral. The initial amount of the Collateral and how the amount may be adjusted is stated in the Specifications.

Z000001

## D.  Program Structure

The Program has two primary, independent components: (1) the insurance coverage provided under the Policy(ies); and (2) the risk financing arrangement provided under the Program.

As set out below in "Termination", if You Default, We may, at Our option, terminate the financing arrangements under the Program.  This will result in all of Your financial obligations under the Program becoming immediately due and payable to Us.

## E.  Definitions

1.  **Allocated Loss Adjustment Expense ("ALAE")** unless otherwise defined in the policy shall be an expense directly allocable to a specific claim including but not limited to: all supplementary payments; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

2.  **ALAE Reserve** is Our evaluation of unpaid ALAE under the Policy(ies).

3.  **Basic Premium** is an amount representing Our expenses under the Retrospective Premium Policy(ies).

4.  **Collateral** is a financial instrument provided by You to secure the deferral of Your financial obligations under the Program.

5.  **Combined Aggregate** is the greatest amount You are obligated to reimburse Us for under the Deductible Policy(ies) and the Retrospective Premium Policy(ies) which shall apply as stated in the Specifications for the term of the Policy(ies) stated in the Specifications.

6.  **Combined Elements** shall include certain common elements that involve the Deductible Policy(ies)   and the Retrospective Premium Policy(ies) that apply to the Program.

7.  **Deductible Amount(s)** is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Policy(ies) as stated in the Specifications.

8.  **Deductible Premium** is the amount paid by You to Us for the Deductible Policy(ies).

9.  **Default** occurs when

    a.  You fail to pay any amount, including but not limited to the initial Loss Fund amount and subsequent adjustments, when it is due under any Agreement or any policy issued by Us to You,

    b.  You file a petition in bankruptcy, a declaration of insolvency or an action or proceeding for dissolution is filed by or against You; a receiver or trustee is appointed for You; You execute a workout agreement; You make an assignment for the benefit of creditors; or any other proceeding or arrangement of a similar nature is instituted by or against You, or

    c.  You fail to provide the initial, adjusted, amendments to or replacement Collateral as required in this Agreement.

Z000002

10. **Due on Demand** is when a payment is due Us at the time the bill is presented to You.

11. **Earned Retrospective Premium ("ERP")** is the premium that is calculated at a Retrospective Premium Adjustment.

12. **Earned Retrospective Premium Formula** is the method of calculating the Retrospective Premium as stated in the Specifications

13. **Excess Premium** is the premium You pay to Us for limiting the losses You are obligated to reimburse Us for to the Loss Limit(s) and for Our assumption of the risk transfer excess of the Loss Limit(s) up to the limits of liability under the Policy(ies).

14. **Incurred ALAE ("IALAE")** is the Paid ALAE plus the ALAE Reserve under the Policy(ies).

15. **Incurred Loss ("IL")** is a Paid Loss plus a Loss Reserve under the Policy(ies).

16. **Loss Based Assessment ("LBA")** is a state charge levied against losses.

17. **Loss Conversion Factor ("LCF")** is a factor applied to the Paid or Incurred Loss, plus Paid or Incurred ALAE.

18. **Loss Development Factor ("LDF")** is a multiplier set by Us at Our sole discretion to evaluate (a) claims and related ALAE that have occurred but have not as yet been reported to You or to Us; and, (b) anticipated changes in Incurred Loss and Incurred ALAE for claims that have been previously reported to Us. How and when the LDF is applied shall be as stated in the Specifications.

19. **Loss Fund** is a non-interest bearing account where Your funds are held by Us or a TPA to provide for the payment of Your obligations within the Loss Limit(s) under the Policy(ies) prior to Your reimbursing Us or the TPA.

20. **Loss Limit(s)** is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Retrospective Premium Policy(ies) and the Deductible Policy(ies) stated in the Specifications. Under this Agreement, the term Loss Limit(s) shall also include Deductible Amount(s).

21. **Loss Reserve** is Our evaluation of the unpaid portion of a claim that has been previously reported to Us under the Policy(ies) and does not include ALAE Reserve.

22. **Other Special Charges** are (a) additional taxes, premium surcharges and premium and loss assessments incurred or paid by Us in connection with the Policy(ies); (b) administrative, statutory or court-ordered fines or penalties incurred or paid by Us in connection with the Policy(ies) not the result of Our negligence; (c) any expenses We incur to collect from You amounts past due and to enforce any of the provisions of this Agreement, except as provided for in Section O of the Terms and Conditions of this Agreement; and (d) any other charge, loss or expense paid or incurred by Us in connection with the Policy(ies) that does not constitute a loss payment under the Policy(ies), ALAE, Loss Based Assessments, Premium Tax, Premium Surcharges or payments to a TPA.

23. **Paid ALAE** is a payment made by Us for ALAE under the Policy(ies).

24. **Paid Loss** is a payment made by Us for a claim under the Policy(ies). Paid Loss does not include ALAE.

25. **Policy(ies)** shall mean those Policy(ies) stated in Sections A and B of the Specifications.

26. **Premium Surcharges** are surcharges and assessments by federal, state, city, municipal or other governmental agencies or required by regulation or statute, that are levied on the basis of premiums and include new premium surcharges and assessments that are levied after the Specifications Effective Date and premium surcharges and

Z000003

assessments for which the rate or computation base changes after the Specifications Effective Date

27. **Premium Tax** includes state taxes and assessments that (1) under the Deductible Policy(ies) is a rate that may be charged against the full state Standard Premium or the Deductible Premium and (2) under the Retrospective Premium Policy(ies) are expressed as Tax Multiplier(s) which is(are) charged within the Earned Retrospective Premium Formula as stated in the Specifications..

28. **Recoveries** are that portion of any payment made under the Policy(ies) that We recover from anyone liable for the loss or from any workers compensation funds. The amount We recover will be applied as follows: (a) first, to any payments made by Us in excess of the Loss Limit(s); and, (b) then the remainder, if any, will be applied to reduce the Loss Limit(s) reimbursable by You.

29. **Standard Premium** for Workers' Compensation and Employers' Liability (WC/EL) is calculated in accordance with the National Council on Compensation Insurance and/or specific state rules using Our manual rates times the exposure times the experience modification times schedule rating modification and/or deviations. With respect to insurance coverages other than WC/EL, standard premium includes the premium We would charge for the Program term subject to the terms of the rating plan.

30. **Third Party Administrator ("TPA")** is a licensed claims administrator that We have selected at Your request to handle and pay the claims presented in accordance with the provisions of the Policy(ies).

31. **TPA Fees ("TPAF")** are fees charged by a TPA engaged by Us under this Agreement to provide claim handling and administration services.

32. **Ultimate Retrospective Premium** is Our evaluation of the ultimate Earned Retrospective Premium based on currently valued losses times the applicable LDF plus the following: Excess Premium, Terrorism Premium, CAT Premium, Premium Surcharges and Other Special Charges.

## F. Payments Due

The payments under this Program and the dates these amounts become due are stated in the Specifications. Each party to the Agreement agrees to remit all payments so that they are received on or before the due date. If any amount is payable and a specific due date is not stated, twenty (20) days from the date of billing will be the due date. You and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under this Agreement.

In the event all or part of a payment due under the Program is in dispute:

1. The undisputed portion of the payment will be remitted in accordance with the terms of this Agreement.
2. A written notice stating the amount and explaining the reason for the dispute will be sent to the address stated in the Specifications on or before the payment due date.

Both parties agree to attempt to resolve any dispute within sixty (60) days after the date of the notice.

## G. Loss Fund

The initial amount of the Loss Fund is stated in the Specifications. We or the TPA reserve the right to adjust the amount of the Loss Fund at any time, but at a minimum annually. The formula for adjustment of the Loss Fund amount is stated in the Specifications.

## H. Collateral

1. Required Letter of Credit

   On or before the Agreement effective date, You shall give Us a clean, unconditional, irrevocable Letter of Credit ("LOC") with an automatic renewal term of twelve (12) months in the form provided by Us. The LOC must be from a bank which is and remains acceptable to Us and is and remains listed on the most current National Association of Insurance Commissioners ("NAIC") list of Acceptable Domestic Banks or U.S. Branches or U.S. Agencies of Acceptable Foreign Institutions ("Qualified Bank"). The LOC shall comply substantially with the requirements for LOCs under New York Insurance Regulation 133 and shall be acceptable to Us. We have provided You with the required form and parameters for the type of Collateral both parties have agreed will be used.

2. Computation, Adjustment, Amendment and Replacement of LOC

   a. Amounts

   The LOC amount shall be in an amount sufficient to secure Your financial obligations under this Agreement. Collateral requirements will be reviewed periodically and We reserve the right to adjust Collateral at any time We deem necessary to secure Your obligations to Us under the Program. The initial amount of the LOC and how it is adjusted are stated in the Specifications. You shall provide Us with an amendment to the LOC for any increase or decrease in the amount required within thirty (30) days of Our request.

   b. Amendments

   Wording amendments requested by Us as a result of a bank error, a policy issuing company change, regulatory changes, or changes in New York Insurance Regulation 133 shall be provided by You within sixty (60) days of Our written or verbal request or not less than fifteen (15) days prior to the LOC expiration date, whichever is sooner.

   c. Nonrenewal of LOC

   If the issuing bank notifies Us of nonrenewal of the LOC in not less than thirty (30) days prior
   to its expiration You shall provide Us with a replacement LOC in an equal or adjusted amount not less than fifteen (15) days prior to its expiration date.

   d. Issuing Bank Approval

   If the issuing bank is no longer acceptable to Us or a Qualified Bank, You shall provide Us with a replacement LOC in an equal or adjusted amount from a bank that is acceptable to Us and that is approved by the NAIC. You shall provide Us with the replacement LOC within thirty (30) days of Our request or not less than fifteen (15) days prior to its expiration date, whichever is sooner. The LOC must be in the form provided by Us.

3. Draws on Collateral

   In the event of a Default, We reserve the right to a partial or full draw on any Collateral provided by You under the provisions of this Agreement or any other agreement between You and Us to pay any amount that is due or may become due as respects any one or more of the following obligations:

   a. Any amount that is due or may become due under this Agreement;

   b. Any amount due under any other agreement You, or any other named insured under the Policy(ies), have or may have with Us or any of Our affiliates.

   c. Any amount that is due under any policy of insurance issued to You by Us or any of Our affiliates.

4. Surrender of LOC

Your duty to provide Collateral will continue until We determine that the Collateral under this Agreement is no longer required. You understand and agree that this duty may continue even if this Agreement is terminated as provided for in Termination section of this Agreement or is otherwise cancelled.

## I.  Audit

An audit for the Policy(ies) stated in the Specifications will be conducted in accordance with the provisions of the Policy(ies). The adjustable elements of the Program will be adjusted based on the audited exposures as stated in the Specifications.

## J.  Invalidity and Severability

It is agreed that if any provision of this Agreement is found to be invalid or unenforceable by a governmental authority or court of law, all the other provisions of this Agreement shall remain valid and enforceable as if the Agreement did not contain the invalid or unenforceable provision. The invalid or unenforceable provision shall be amended to the minimum extent necessary to cure the invalid or unenforceable element and to preserve the original intent.

## K.  Non-Waiver of Rights

Failure by either party to enforce any provision of this Agreement shall not be interpreted as a waiver of such provision or any other provision or any existing or future rights or privileges under this Agreement. The terms and conditions of this Agreement may be strictly enforced at any time despite any past or subsequent failure to do so by either party.

## L.  Changes in this Agreement

This Agreement shall not be waived, changed or assigned except by an Addendum, signed by a duly authorized representative of each party to this Agreement.

## M. Offset

The parties under this Agreement each reserve the right to offset any undisputed balance due from one party to the other under this or any other Agreement entered into between Us, except as prohibited by law.

## N.  Reliance on Others

You understand, acknowledge, and confirm that We did not offer advice to You concerning the proper financial, accounting, or tax treatment for the Policy(ies) and nothing herein should be considered to constitute such advice. You further represent that if accounting advice, tax advice, or other expert professional assistance is required, You will rely on Your own accountant, adviser, counsel, or other similar competent professional with expertise in the required area.

Z000006

### O.  Arbitration

Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and the following procedures:

1.  Written notice requesting arbitration will be sent by the initiating party via certified or registered mail, return receipt requested, to the other party with the required copies to the AAA.  The notice shall state the nature of the dispute, the amount involved, if any, and the remedy sought.

2.  A panel shall be made up of three arbitrators.  Each party shall select one arbitrator and the two selected arbitrators shall select an impartial third arbitrator with a commercial liability insurance background who shall preside at the hearing.

3.  If either party fails to appoint its arbitrator within thirty (30) days of the delivery of the request, the other party shall send notice by certified or registered mail of its intention to appoint a second arbitrator and may do so within ten days of the appointment notice date.

4.  If the two arbitrators do not select the third arbitrator within thirty (30) days of their appointment, each arbitrator shall select three candidates, or a smaller number as agreed to by the two arbitrators, from a list of qualified candidates with a commercial liability insurance background provided by the American Arbitration Association.  At the request of the two arbitrators, the American Arbitration Association shall select the third arbitrator from the list of candidates submitted.

5.  Arbitration shall take place in   Los Angeles  , California.

6.  The arbitrators shall not limit, expand or modify the terms of this Agreement nor award damages in excess of compensatory damages under this Agreement.  Such excess damages would include without limitation any form of fine or multiple, punitive or exemplary damages and each party waives any claim to such excess damages.  Confirmation of the award may be entered in any court having jurisdiction.

7.  Each party shall pay the expense of its own arbitrator and equally pay the expenses of the third arbitrator and any other expenses of the arbitration proceeding (except witnesses).  Each party shall pay its own costs of counsel and witnesses.

### P.  Termination

This Agreement will terminate by mutual written consent.  We also reserve the right to terminate this Agreement if (1) there is a material change in Your ownership or (2) one or more of the Policy(ies) stated in the Specifications is canceled.   Despite the termination of the Agreement, You are still liable for all Your obligations under this Agreement incurred up to the date of termination.  It is understood and agreed by both parties that if billings are suspended at any point in time because all payments have been made, We still reserve the right to bill You at a future date for any and all claims subsequently reported, together with related expenses.

In the event of a mid-term termination of the Program, (a) the Agreement will follow the cancellation provisions of the Policy(ies); and (b) the calculation of the applicable Program elements, including but not limited to the Deductible Premium, Excess Premium, Minimum Retrospective Premium, Maximum Retrospective Premium, Combined Aggregate, Terrorism Premium, CAT Premium, Basic Premium and the Combined Aggregate, will be subject to the minimum amounts stated in the Specifications.

Z000007

In the event of a Default or a material change in Your ownership, or if one or more of the Policy(ies) stated in the Specifications is canceled, We may, at Our option, terminate the financing portion of the Program.  The amount immediately due and payable to Us will be determined by Us using all of Your obligations under this Agreement calculated using the most recent incurred loss valuation times the applicable LDF determined by Us at Our sole discretion at the time of termination; in addition to the foregoing if termination is because of Your failure to pay any amount or provide any Collateral required under this Agreement, We may instead require, at Our option, payment of the full Standard Premium by converting the Program to a guaranteed cost rating plan using Our manual rates in effect as of the Policy(ies) effective date.

**Q. Governing Law And Jurisdiction**

This Agreement shall be governed by and interpreted in accordance with the laws of the State of California without regard to its choice of law doctrine.

Z000008

The parties have caused this Agreement to be signed by their duly authorized representatives.


**GUESS?, INC.**

By: _____

Title: _DIRECTOR - RISK MANAGEMENT_

Date: _01-23-19_

**ZURICH AMERICAN INSURANCE COMPANY**

By: _____

Title: _____

Date: _____


**AMERICAN ZURICH INSURANCE COMPANY**

By: _____

Title: _____

Date: _____

Z000009

**SPECIFICATIONS TO PAID DEDUCTIBLE AND
PAID LOSS RETROSPECTIVE AGREEMENT
BETWEEN
GUESS?, INC.
AND
AMERICAN ZURICH INSURANCE COMPANY ("AZIC")
ZURICH AMERICAN INSURANCE COMPANY ("ZAIC")**

**Specifications Effective Date: May 1, 2018**

**A. Deductible Policy(ies)**

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| WC | AZIC | WC 0152757-00 | 05/01/2019 |
| GL | AZIC | GLO 0152759-00 | 05/01/2019 |

**B. Retrospective Premium Policy(ies)**

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| WC | ZAIC | WC 0152758-00 | 05/01/2019 |

**C. Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to the coverages provided under the Policy(ies):

1. The first $ 350,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

2. The first $ 350,000 under WC coverage arising out of occupational disease payable to each affected employee.

3. The first $ 350,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

4. The first $ 350,000 under EL coverage arising out of occupational disease payable to each affected employee.

5. The first $ 150,000 for each occurrence, claim, offense, accident, act, error or omission or any other such similar event as defined or used in the policy for each of the coverages that involves Coverages A, B, C or any other coverage provided under the Commercial General Liability Policy(ies).

6. With respect to 1 through 5 above, the amount of ALAE that You are obligated to pay Us will be determined as follows:

   ALAE is included within the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the ALAE excess of the Loss Limit.

**D. Deductible Policy(ies)**

**Deductible Premium**

Z000010

You are obligated to pay Us Deductible Premium. The Deductible Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Deductible Policy. The Deductible Premium stated below is an estimated amount which will be adjusted and is payable to Us at the time We issue the premium audit bill. In no event will the amount of the Deductible Premium be less than the Minimum Premium stated below.

| Policy(ies) | Exposure Base | Rate | Estimated Exposure | Deductible Premium | Minimum Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | $0.133814 per $100 | $158,073,907 | $211,525 | $211,525 |
| GL | Sales | $0.125184 per $1,000 | $679,000,000 | $85,000 | $85,000 |

### E. Retrospective Premium Policy(ies)

#### 1. Standard & Deposit Premiums – Retrospective Premium Policy(ies)

You are obligated to pay Us the Deposit Premium. The Deposit Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Retrospective Premium Policy. In no event will the amount of Deposit Premium be less than the Deposit Premium amount stated below. The Standard Premium stated below is an estimated amount. The premium audit billing will be deferred until We issue the first Retrospective Premium Adjustment billing.

| Policy(ies) | Exposure Base | Standard Premium Rate | Estimated Exposure | Standard Premium | Deposit Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | As stated in policy | $1,221,654 | $8,204 | $0 |

#### 2. Retrospective Premium Elements

##### a. Basic Premium

| Estimate At Inception | | Adjustable at Audit | | |
|---|---|---|---|---|
| Basic Premium Amount | Estimated Exposure | Rate | Exposure Base | Basic Premium shall never be less than |
| $0 | $ 1,221,654 | $ 0.00 per 100 | Audited Payroll excluding stop | $0 |

You are obligated to pay Us the adjusted Basic Premium amount times the Tax Multiplier.

##### b. Tax Multiplier

The Tax Multiplier is based on Our current rates and [is not adjustable / is adjustable based on the final audited premium].

The following are the rates charged based on the state distribution of Your premium:

| Policy(ies) | Tax Multiplier |
|---|---|

Z000011

| WC/EL | 1.0312 |
|-------|--------|

3. **Earned Retrospective Premium Formula**

For purposes of calculating the Earned Retrospective Premium, the following formula applies:

Formula: {((IL + IALAE) x LCF*) + TPAF** + Basic Premium} x TM = ERP

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.
**TPAF paid by Us.

4. **Retrospective Premium Adjustment**

a. **Retrospective Premium Adjustment Billings**

You are obligated to pay Us each Retrospective Premium Adjustment billing. We will calculate a Retrospective Premium Adjustment billing beginning with losses valued eighteen (18) months after the Specifications Effective Date and, at a minimum, annually thereafter. Each Retrospective Premium Adjustment billing will be calculated as follows:

The sum of:
1. Earned Retrospective Premium (ERP), plus
2. audited Terrorism Premium and CAT Premium, plus
3. Premium Surcharges and Other Special Charges.

Less the sum of the following:
4. Billings for Deposit Premium for the Policy(ies) stated in Section E. 1., plus
5. Payments made within the Loss Limit(s), according to Our records, by the TPA, plus
6. Loss Billings by Us, plus
7. Terrorism Premium and CAT Premium billings, plus
8. Prior Earned Retrospective Premium billings, plus
9. the sum of Loss Reserves and ALAE Reserves times LCF* all sums times the Tax Multiplier, plus
10. Premium Surcharges and Other Special Charges billings.

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.

At each Retrospective Premium Adjustment billing, You will pay the premium due Us within twenty (20) days of the billing date. Retrospective Premium Adjustment billings shall continue until We suspend billings when all losses have been paid.

**F. Combined Elements**

1. **Terrorism Premium And Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program)**

a. You are obligated to pay Us a Terrorism Premium charge for risk of loss resulting from terrorism and Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program) and hereinafter referred to as CAT Premium.

b. Terrorism Premium and CAT Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Policy .

c. Terrorism Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill. Terrorism Premium for the Retrospective Premium

Z000012

Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing.

1. The WC Terrorism Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

2. The GL Terrorism Premium is included in the GL Premium or the GL rate stated elsewhere in these Specifications and is subject to audit.

d. CAT Premium applies with respect to WC Policy(ies) only.  CAT Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill.  CAT Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing. CAT Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

2. **Third Party Administrator ("TPA")**

   At Your request, a TPA has been selected to perform claim handling and claim administration services.

   a. The TPA is Gallagher Bassett Services, Inc.

   b. We are ultimately responsible for these services.  Therefore, We reserve the right to terminate the TPA at Our discretion.

   c. You are obligated to pay the TPA for all TPAF.  If You fail to pay the TPA for any TPAF and the TPA bills Us, You are obligated to pay Us for the sums paid by Us to the TPA. Unless otherwise stated on the invoice, this amount will be Due on Demand.

   d. If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for an LCF of 1.12 as stated elsewhere in these Specifications.  Unless otherwise stated on the invoice, this amount will be Due on Demand.

3. **Loss Based Assessments (LBAs) - Deductible Policy(ies)**

   a. You are obligated to pay Us LBA deposits of $ 0for Deductible Policy(ies)

   b. The LBA deposits held by Us will be reconciled annually beginning eighteen (18) months after the Specifications Effective Date.  At each reconciliation, actual LBA charges will be computed by Us by multiplying WC Losses within the Loss Limit(s) by the state LBA rate below. Reconciliations shall continue until We suspend LBA deposit reconciliations when all losses have been paid.  At each reconciliation, if the actual LBA charge exceeds the LBA deposit held by Us You shall pay Us the additional LBA charges. With respect to the Retrospective Premium Policy(ies), the reconciled LBA deposit shall be included in ERP at each Retrospective Premium Adjustment.

LBA Rates

| State | Rate |
|-------|--------|
| AL | 0.0055 |
| AK | 0.0600 |
| DC | 0.0961 |
| DE | 0.0365 |
| ID | 0.0160 |
| KS | 0.0374 |
| LA | 0.0760 |
| ME | 0.0072 |

Z000013

| | |
|---|---|
| MI | 0.0144 |
| MS | 0.0183 |
| USL&HW* | 0.0670 |

*\* and extensions, as applicable.*

### 4. Loss Billings

a. The TPA will bill You directly for Paid Losses, Paid ALAE and TPAF. You are obligated to pay these sums directly to the TPA.

b. If for any reason We assume those payment obligations, or We assume the claim handling and administration services, We will bill You monthly.  You are obligated to pay Us for the following:

   1.  With respect to Deductible Policy(ies),

      a.  Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,

      b.  less Recoveries within the Loss Limit(s) credited during the month,

      c.  times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,

      d.  plus the TPAF paid by Us.

   2.  With respect to Retrospective Premium Policy(ies),

      a.  Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,

      b.  less Recoveries within the Loss Limit(s) credited during the month,

      c.  times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,

      d.  plus the TPAF paid by Us,

      e.  times the Tax Multiplier.

Loss Billings shall continue until either i) We suspend billings when all losses have been paid or ii)  the conversion of the Loss Billings resulting in an alternate method of payment as may be provided for in the Loss Billing Conversion section of these Specifications with respect to Deductible Policy(ies) and the Retrospective Premium Adjustment section of these Specifications with respect to Retrospective Premium Policy(ies).

### 7. Premium Surcharges and Other Special Charges

a. Premium Surcharges

You are obligated to pay Us Premium Surcharges in addition to the Deposit Premiums. These sums are payable to Us as stated in the Policy(ies.)

You are obligated to pay Us for Premium Surcharges which apply in any jurisdiction in which exposure exists or where exposure develops under the Policy(ies).   Premium Surcharges are subject to change without prior notice.  Premium Surcharges will be billed by Us based upon rates according to applicable regulatory or statutory requirements.

You will be billed and are obligated to pay Us for additional Premium Surcharges at the time We issue the premium audit billing for the Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at each Retrospective Premium Adjustment billing.

Z000014

The applicable Premium Surcharges may apply to, but are not limited to, the following: Deductible Premium, Standard Premium, Earned Retrospective Premium, Excess Premium, Terrorism Premium, CAT Premium and audited exposures.

b.  Other Special Charges

You are obligated to pay Us for Other Special Charges.  You will be billed for Other Special Charges at the time We issue the premium audit billing for Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at the time We issue each Retrospective Premium Adjustment billing unless otherwise required by law.  We will provide You with information about the purpose of the charges and, as applicable, the amount of the charge and the application thereof.  You will be billed based upon the information provided.

8.  **Loss Fund**

a.  You are obligated to pay the Loss Fund to the TPA.  The TPA will bill You directly and hold and adjust the Loss Fund.

b.  If for any reason You fail to fund the TPA's Loss Fund requirements, You are obligated to pay Us an amount equal to the Loss Fund billed to Us by the TPA.

c.  If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for the Loss Fund as follows:

1.  Paid Losses within the Loss Limit(s) and applicable Paid ALAE  for 12 months prior to the adjustment date,
2.  times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,
3.  divided by 12 equals the monthly average payment,
4.  monthly average payment times 2.5 equals the adjusted Loss Fund,
5.  Required/Amended Loss Fund less Loss Fund held equals the additional or return amount due.

d.  Adjustments of the Loss Fund will be computed, at a minimum, annually after the Specifications Effective Date.  We may adjust the Loss Fund at any time We determine that the amount We require is greater than the Loss Fund amount on hand.

e.  At the time of each Loss Fund adjustment, payment by You will be due within twenty (20) days of the billing date; payment by Us will be credited to Your subsequent Loss Billing. When We have determined that We no longer require a Loss Fund, the remaining balance in the Loss Fund will be returned to You.

9.  **Collateral**

| | |
|---|---|
| Collateral on hand: | $0 |
| Adjustment: | $450,000 |
| Required/Amended Collateral amount: | $450,000 |

a.  The Required/Amended Collateral amount stated above is due on or before the Specifications Effective Date.  Collateral requirements will be reviewed periodically and We reserve the right to require additional Collateral at any time We deem necessary to secure Your obligations to Us under the Program.

b.  The adjustment of the Collateral will include, but not be limited to, the sum of i. and ii. below:

i)  With respect to the Retrospective Premium Policy(ies):

Z000015

       a.) Ultimate Retrospective Premium,

       b.) less the sum of amounts billed within the Loss Limit(s) by the TPA,

       c.) less the sum of amounts billed by Us for all deposit amounts, premium audits, Loss Billings and Retrospective Premium Adjustment billings.

  ii) With respect to the Deductible Policy(ies):

       a.) Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE,

       b.) times the applicable LDF,

       c.) times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,

       d.) plus the TPAF billed by Us,

       e.) plus the applicable LBA,

       f.) less the sum of amounts billed within the Loss Limit(s) by the TPA,

       g.) less the sum of amounts billed by Us for Loss Billings, LBA and TPAF.

c. For the Policy(ies) stated in these Specifications, LDFs used by Us to compute Your Required/Amended Collateral obligation will be determined by Us, at our sole discretion, at the time of each Collateral adjustment.

## 10. Notices

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:     Guess?, Inc.

Address:      1444 South Alameda Street
                 Los Angeles, CA 90021

Telephone:   (213) 765-5788

If to Us:      Zurich American Insurance Company, American Zurich Insurance Company

Address:      300 South Riverside Plaza
                 Chicago, IL 80016
                 Attention: GCiNA Casualty Regional Manager

Telephone:   (312)-496-9213

Z000016

The parties have caused the Specifications, effective May 1, 2018 to be signed by their duly
authorized representatives.

| GUESS?, INC. | ZURICH AMERICAN INSURANCE COMPANY |
|---|---|
| By: | By: |
| Title: DIRECTOR - RISK MANAGEMENT | Title: |
| Date: 07-23-18 | Date: |

AMERICAN ZURICH INSURANCE COMPANY

By:

Title:

Date:

Z000017

**SPECIFICATIONS TO PAID DEDUCTIBLE AND
PAID LOSS RETROSPECTIVE AGREEMENT
BETWEEN
GUESS?, INC.
AND
AMERICAN ZURICH INSURANCE COMPANY ("AZIC")
ZURICH AMERICAN INSURANCE COMPANY ("ZAIC")**

**Specifications Effective Date: May 1, 2019**

**A.  Deductible Policy(ies)**

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| WC | AZIC | WC 0152757-01 | 5/1/2020 |
| GL | ZAIC | GLO 0152759-01 | 5/1/2020 |

**B.  Retrospective Premium Policy(ies)**

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| WC | ZAIC | WC 0152758-01 | 5/1/2020 |

**C.  Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to the coverages provided under the Policy(ies):

1.  The first **$350,000** under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

2.  The first **$350,000** under WC coverage arising out of occupational disease payable to each affected employee.

3.  The first **$350,000** under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

4.  The first **$350,000** under EL coverage arising out of occupational disease payable to each affected employee.

5.  The first **$150,000** for each occurrence, claim, offense, accident, act, error or omission or any other such similar event as defined or used in the policy for each of the coverages that involves Coverages A, B, C or any other coverage provided under the  Commercial General Liability Policy(ies).

6.  With respect to 1 through 5 above, the amount of ALAE that You are obligated to pay Us will be determined as follows:

    ALAE is included within the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the ALAE excess of the Loss Limit.

**D.  Deductible Policy(ies)**

**Deductible Premium**

You are obligated to pay Us Deductible Premium.  The Deductible Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Deductible Policy. The Deductible Premium stated below is an estimated amount which will be adjusted and is payable

Z000018

to Us at the time We issue the premium audit bill. In no event will the amount of the Deductible Premium be less than the Minimum Premium stated below.

| Policy(ies) | Exposure Base | Rate | Estimated Exposure | Deductible Premium | Minimum Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll including Retro states excluding stop gap | $0.134470 per $100 | $162,682,384 | $218,759 | $218,759 |
| GL | US Sales | $0.125184 per $1,000 | $743,000,000 | $93,012 | $93,012 |

**E. Retrospective Premium Policy(ies)**

**1. Standard & Deposit Premiums – Retrospective Premium Policy(ies)**

You are obligated to pay Us the Deposit Premium. The Deposit Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Retrospective Premium Policy. In no event will the amount of Deposit Premium be less than the Deposit Premium amount stated below. The Standard Premium stated below is an estimated amount. The premium audit billing will be deferred until We issue the first Retrospective Premium Adjustment billing.

| Policy(ies) | Exposure Base | Standard Premium Rate | Estimated Exposure | Standard Premium | Deposit Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | As stated in policy | $1,691,444 | $12,202 | $0 |

**2. Retrospective Premium Elements**

a. Basic Premium

| Estimate At Inception | | Adjustable at Audit | | |
|---|---|---|---|---|
| Basic Premium Amount | Estimated Exposure | Rate | Exposure Base | Basic Premium shall never be less than |
| $0 | $1,691,444 | $0.00 per $100 | Audited Payroll excluding stop gap | $0 |

You are obligated to pay Us the adjusted Basic Premium amount times the Tax Multiplier.

b. Tax Multiplier

The Tax Multiplier is based on Our current rates and is not adjustable.

The following are the rates charged based on the state distribution of Your premium:

| Policy(ies) | Tax Multiplier |
|---|---|
| WC/EL | 1.0317 |

Z000019

   c. Terrorism Premium and CAT Premium

     You are obligated to pay Us the adjusted amount for Terrorism Premium and CAT Premium upon Our issuance of the first Retrospective Premium Adjustment billing.

   d. Premium Surcharges and Other Special Charges

     You are obligated to pay Us the adjusted amount for Premium Surcharges and Other Special Charges at each Retrospective Premium Adjustment billing.

**3. Earned Retrospective Premium Formula**

For purposes of calculating the Earned Retrospective Premium, the following formula applies:

Formula: $\{((IL + IALAE) \times LCF^*) + TPAF^{**} + Basic\ Premium\} \times TM = ERP$

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.
**TPAF paid by Us.

**4. Retrospective Premium Adjustment**

   a. **Retrospective Premium Adjustment Billings**

     You are obligated to pay Us each Retrospective Premium Adjustment billing. We will calculate a Retrospective Premium Adjustment billing beginning with losses valued eighteen (18) months after the Specifications Effective Date and, at a minimum, annually thereafter. Each Retrospective Premium Adjustment billing will be calculated as follows:

     The sum of:
     1. Earned Retrospective Premium (ERP), plus
     2. audited Terrorism Premium and CAT Premium, plus
     3. Premium Surcharges and Other Special Charges.

     Less the sum of the following:
     4. Billings for Deposit Premium for the Policy(ies) stated in Section E. 1., plus
     5. Payments made within the Loss Limit(s), according to Our records, by the TPA, plus
     6. Loss Billings by Us, plus
     7. Terrorism Premium and CAT Premium billings, plus
     8. Prior Earned Retrospective Premium billings, plus
     9. the sum of Loss Reserves and ALAE Reserves times LCF* all sums times the Tax Multiplier, plus
     10. Premium Surcharges and Other Special Charges billings.

     *If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.

     At each Retrospective Premium Adjustment billing, You will pay the premium due Us within twenty (20) days of the billing date. Retrospective Premium Adjustment billings shall continue until We suspend billings when all losses have been paid.

**F. Combined Elements**

**1. Terrorism Premium And Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program)**

   a. You are obligated to pay Us a Terrorism Premium charge for risk of loss resulting from terrorism and Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program) and hereinafter referred to as CAT Premium.

Z000020

b. Terrorism Premium and CAT Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Policy .

c. Terrorism Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill. Terrorism Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing.

    1. The WC Terrorism Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

    2. The GL Terrorism Premium is included in the GL Premium or the GL rate stated elsewhere in these Specifications and is subject to audit.

d. CAT Premium applies with respect to WC Policy(ies) only. CAT Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill. CAT Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing. CAT Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

**2. Third Party Administrator ("TPA")**

At Your request, a TPA has been selected to perform claim handling and claim administration services.

a. The TPA is Gallagher Bassett Services, Inc.

b. We are ultimately responsible for these services. Therefore, We reserve the right to terminate the TPA at Our discretion.

c. You are obligated to pay the TPA for all TPAF. If You fail to pay the TPA for any TPAF and the TPA bills Us, You are obligated to pay Us for the sums paid by Us to the TPA. Unless otherwise stated on the invoice, this amount will be Due on Demand.

d. If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for an LCF of 1.12 as stated elsewhere in these Specifications. Unless otherwise stated on the invoice, this amount will be Due on Demand.

**3. Loss Billings**

a. The TPA will bill You directly for Paid Losses, Paid ALAE and TPAF. You are obligated to pay these sums directly to the TPA.

b. If for any reason We assume those payment obligations, or We assume the claim handling and administration services, We will bill You monthly. You are obligated to pay Us for the following:

    1. With respect to Deductible Policy(ies),

        a. Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,

        b. less Recoveries within the Loss Limit(s) credited during the month,

        c. times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,

        d. plus the TPAF paid by Us.

    2. With respect to Retrospective Premium Policy(ies),

    a.  Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,

    b.  less Recoveries within the Loss Limit(s) credited during the month,

    c.  times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,

    d.  plus the TPAF paid by Us,

    e.  times the Tax Multiplier.

Loss Billings shall continue until either i) We suspend billings when all losses have been paid or ii) the conversion of the Loss Billings resulting in an alternate method of payment as may be provided for in the Loss Billing Conversion section of these Specifications with respect to Deductible Policy(ies) and the Retrospective Premium Adjustment section of these Specifications with respect to Retrospective Premium Policy(ies).

**4.    Premium Surcharges and Other Special Charges**

    a.  Premium Surcharges

You are obligated to pay Us Premium Surcharges in addition to the Deposit Premiums. These sums are payable to Us as stated in the Policy(ies.)

You are obligated to pay Us for Premium Surcharges which apply in any jurisdiction in which exposure exists or where exposure develops under the Policy(ies). Premium Surcharges are subject to change without prior notice. Premium Surcharges will be billed by Us based upon rates according to applicable regulatory or statutory requirements.

You will be billed and are obligated to pay Us for additional Premium Surcharges at the time We issue the premium audit billing for the Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at each Retrospective Premium Adjustment billing.

The applicable Premium Surcharges may apply to, but are not limited to, the following: Deductible Premium, Standard Premium, Earned Retrospective Premium, Excess Premium, Terrorism Premium, CAT Premium and audited exposures.

    b.  Other Special Charges

You are obligated to pay Us for Other Special Charges. You will be billed for Other Special Charges at the time We issue the premium audit billing for Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at the time We issue each Retrospective Premium Adjustment billing unless otherwise required by law. We will provide You with information about the purpose of the charges and, as applicable, the amount of the charge and the application thereof. You will be billed based upon the information provided.

**5.    Loss Fund**

    a.  You are obligated to pay the Loss Fund to the TPA. The TPA will bill You directly and hold and adjust the Loss Fund.

    b.  If for any reason You fail to fund the TPA's Loss Fund requirements, You are obligated to pay Us an amount equal to the Loss Fund billed to Us by the TPA.

    c.  If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for the Loss Fund as follows:

        1.  Paid Losses within the Loss Limit(s) and applicable Paid ALAE for 12 months prior to the adjustment date,

        2.  times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,

Z000022

      3. divided by 12 equals the monthly average payment,

      4. monthly average payment times 2.5 equals the adjusted Loss Fund,

      5. Required/Amended Loss Fund less Loss Fund held equals the additional or return amount due.

  d. Adjustments of the Loss Fund will be computed, at a minimum, annually after the Specifications Effective Date. We may adjust the Loss Fund at any time We determine that the amount We require is greater than the Loss Fund amount on hand.

  e. At the time of each Loss Fund adjustment, payment by You will be due within twenty (20) days of the billing date; payment by Us will be credited to Your subsequent Loss Billing. When We have determined that We no longer require a Loss Fund, the remaining balance in the Loss Fund will be returned to You.

6. **Collateral**

| | |
|---|---|
| Collateral on hand: | $450,000 |
| Adjustment: | $450,000 |
| Required/Amended Collateral amount: | $900,000 |

  a. The Required/Amended Collateral amount stated above is due on or before the Specifications Effective Date. Collateral requirements will be reviewed periodically and We reserve the right to require additional Collateral at any time We deem necessary to secure Your obligations to Us under the Program.

  b. The adjustment of the Collateral will include, but not be limited to, the sum of i. and ii. below:

    i) With respect to the Retrospective Premium Policy(ies):
      a.) Ultimate Retrospective Premium,
      b.) less the sum of amounts billed within the Loss Limit(s) by the TPA,
      c.) less the sum of amounts billed by Us for all deposit amounts, premium audits, Loss Billings and Retrospective Premium Adjustment billings.

    ii) With respect to the Deductible Policy(ies):
      a.) Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE,
      b.) times the applicable LDF,
      c.) times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,
      d.) plus the TPAF billed by Us,
      e.) less the sum of amounts billed within the Loss Limit(s) by the TPA,
      f.) less the sum of amounts billed by Us for Loss Billings and TPAF.

7. **Notices**

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:        Guess?, Inc.

Address:        144 South Alameda Street
Los Angeles, CA 90021
Attention: Todd Marumoto

Telephone:     213-765-5788

Z000023

If to Us:          Zurich American Insurance Company

                   American Zurich Insurance Company

Address:           777 South Figueroa Street, Suite 3900
                   Los Angeles, CA 90017
                   Attention: George Gruff

Telephone:         213-270-0836

The parties have caused the Specifications, effective **May 1, 2019** to be signed by their duly authorized representatives.

GUESS?, INC.                          ZURICH AMERICAN INSURANCE COMPANY

By: _____             By: _____

Title: _____          Title: _____

Date: _____           Date: _____


                                      AMERICAN ZURICH INSURANCE COMPANY

                                      By: _____

                                      Title: _____

                                      Date: _____

Z000024

## PAID DEDUCTIBLE AND PAID LOSS RETROSPECTIVE AGREEMENT

This Agreement, effective on the **1ˢᵗ** day of **May, 2020**, between **Guess?, Inc.** (referred to as "You" and "Your") and **Zurich American Insurance Company** and **American Zurich Insurance Company** (collectively referred to as "We," "Us" and "Our").

### TERMS AND CONDITIONS

### A. Purpose of the Agreement

The purpose of this Agreement is to outline (a) the scope, description and structure of the Paid Deductible and the Paid Loss Retrospective Premium (collectively referred to as the "Program") You and We have entered into and (b) the duties and obligations of each party with respect to this Program.

### B. Scope of the Agreement

The Policy(ies) for each line of business issued by the applicable insurance company, including all endorsements, extensions, renewals and/or rewrites, to which this Agreement applies are stated in the Specifications.

This Agreement has two parts: Terms and Conditions and Specifications. Each part of the Agreement will be signed by both parties. The Agreement term is continuous and will be amended for each Program change by adding new Specifications, effective on the date of the change, and signed by both parties.

This Agreement governs the structure and operation of and the duties and obligations of each party to this Program. By executing this agreement, you acknowledge that we provided you with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and that the terms of this Agreement reflect the final agreement to You and Us relating to the resolution of disputes under this Agreement.

### C. Program Description

Under the Program, We handle and pay the claims presented in accordance with the provisions of the Policy(ies) and bill You for the claim payments within the Loss Limit(s), plus related expenses and assessments, as stated in the Specifications. You agree to and shall remit to Us all amounts when due, as stated in the Specifications. We hold a Loss Fund in an amount stated in the Specifications so that We do not use Our funds to pay Your obligations within the Loss Limit(s).

The Earned Retrospective Premium is calculated and adjusted based on Your loss experience at specified loss valuation dates after the expiration of the Policy(ies) until such time as, if applicable, the Combined Aggregate amount is reached.

As a consequence of providing You with a risk financing arrangement under this Program, We assume a financial risk for which We may require Collateral. The initial amount of the Collateral and how the amount may be adjusted is stated in the Specifications.

### D. Program Structure

The Program has two primary, independent components: (1) the insurance coverage provided under the Policy(ies); and (2) the risk financing arrangement provided under the Program.

As set out below in "Termination", if You Default, We may, at Our option, terminate the financing arrangements under the Program. This will result in all of Your financial obligations under the Program becoming immediately due and payable to Us.

### E. Definitions

1. **Allocated Loss Adjustment Expense ("ALAE")** unless otherwise defined in the Policy shall be an expense directly allocable to a specific claim including but not limited to: all supplementary payments; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the Policy.

2. **ALAE Reserve** is Our evaluation of unpaid ALAE under the Policy(ies).

3. **Basic Premium** is an amount representing Our expenses under the Policy(ies).

4. **Collateral** is a financial instrument provided by You to Us to secure payment of Your financial obligations under the Program.

5. **Combined Aggregate** is the greatest amount You are obligated to reimburse Us for under the Deductible Policy(ies) and the Retrospective Premium Policy(ies) which shall apply as stated in the Specifications for the term of the Policy(ies) stated in the Specifications.

6. **Combined Elements** shall include certain common elements that involve the Deductible Policy(ies) and the Retrospective Premium Policy(ies) that apply to the Program.

7. **Deductible Amount(s)** is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Deductible Policy(ies).

8. **Deductible Premium** is the amount paid by You to Us for the Deductible Policy(ies) and, for ease of reference, this/these amount(s) are restated in the Specifications.

9. **Default** occurs when

   a. You fail to pay any amount, including but not limited to the initial Loss Fund amount and subsequent adjustments, when it is due under any Agreement or any policy issued by Us to You,

   b. You file a petition in bankruptcy, a declaration of insolvency or an action or proceeding for dissolution is filed by or against You; a receiver or trustee is appointed for You; You execute a workout agreement; You make an assignment for the benefit of creditors; or any other proceeding or arrangement of a similar nature is instituted by or against You, or

   c. You fail to provide the initial, adjusted, amendments to or replacement Collateral as required in this Agreement.

10. **Due on Demand** is when a payment is due Us at the time the bill is presented to You.

Z000026

11. **Earned Retrospective Premium ("ERP")** is the premium that is calculated at a Retrospective Premium Adjustment.

12. **Earned Retrospective Premium Formula** is the method of calculating the Retrospective Premium as stated in the Specifications.

13. **Excess Premium** is the premium You pay to Us for limiting the losses You are obligated to reimburse Us for to the Loss Limit(s) and for Our assumption of the risk transfer excess of the Loss Limit(s) up to the limits of liability under the Retrospective Premium Policy(ies).

14. **Incurred ALAE ("IALAE")** is the Paid ALAE plus the ALAE Reserve under the Policy(ies).

15. **Incurred Loss ("IL")** is a Paid Loss plus a Loss Reserve under the Policy(ies).

16. **Loss Based Assessment ("LBA")** is a state charge levied against losses.

17. **Loss Development Factor ("LDF")** is a multiplier set by Us at Our sole discretion to evaluate (a) claims and related ALAE that have occurred but have not as yet been reported to You or to Us; and, (b) anticipated changes in Incurred Loss and Incurred ALAE for claims that have been previously reported to Us. How and when the LDF is applied shall be as stated in the Specifications.

18. **Loss Fund** is a non-interest bearing account where Your funds are held by Us to provide for the payment of Your obligations within the Loss Limit(s) under the Policy(ies) prior to Your reimbursing Us.

19. **Loss Limit(s)** is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Retrospective Premium Policy(ies) and the Deductible Policy(ies) stated in the Specifications. Under this Agreement, the term Loss Limit(s) shall also include Deductible Amount(s).

20. **Loss Reserve** is Our evaluation of the unpaid portion of a claim that has been previously reported to Us under the Policy(ies) and does not include ALAE Reserve.

21. **Other Special Charges** are (a) additional taxes, premium surcharges and premium and loss assessments incurred or paid by Us in connection with the Policy(ies); (b) administrative, statutory or court-ordered fines or penalties incurred or paid by Us in connection with the Policy(ies) not the result of Our negligence; (c) any expenses We incur to collect from You amounts past due and to enforce any of the provisions of this Agreement, except as provided for in Section O of the Terms and Conditions of this Agreement; and (d) any other charge, loss or expense paid or incurred by Us in connection with the Policy(ies) that does not constitute a loss payment under the Policy(ies), ALAE, Loss Based Assessments, Premium Tax, Premium Surcharges or payments to a TPA.

22. **Paid ALAE** is a payment made by Us for ALAE under the Policy(ies).

23. **Paid Loss** is a payment made by Us for a claim under the Policy(ies). Paid Loss does not include ALAE.

24. **Policy(ies)** shall mean those Policy(ies) stated in Sections A and B of the Specifications.

25. **Premium Surcharges** are surcharges and assessments by federal, state, city, municipal or other governmental agencies or required by regulation or statute, that are levied on the basis of premiums and include new premium surcharges and assessments that are levied after the Specifications Effective Date and premium surcharges and assessments for which the rate or computation base changes after the Specifications Effective Date.

26. **Premium Tax** includes state taxes and assessments that (1) under the Deductible Policy(ies) is a rate that may be charged against the full state Standard Premium or the Deductible Premium and (2) under the Retrospective Premium Policy(ies) are expressed as Tax Multiplier(s) which is(are) charged within the Earned Retrospective Premium Formula as stated in the Specifications..

27. **Recoveries** are that portion of any payment made under the Policy(ies) that We recover from anyone liable for the loss or from any workers compensation funds.  The amount We recover will be applied as follows: (a) first, to any payments made by Us in excess of the Loss Limit(s); and, (b) then the remainder, if any, will be applied to reduce the Loss Limit(s) reimbursable by You.

28. **Standard Premium** for Workers' Compensation and Employers' Liability (WC/EL) is calculated in accordance with the National Council on Compensation Insurance and/or specific state rules using Our manual rates times the exposure times the experience modification times schedule rating modification and/or deviations.  With respect to insurance coverages other than WC/EL, standard premium includes the premium We would charge for the Program term subject to the terms of the rating plan.

29. **Ultimate Retrospective Premium** is Our evaluation of the ultimate Earned Retrospective Premium based on currently valued losses times the applicable LDF plus the following:  Excess Premium, Terrorism Premium, CAT Premium, Premium Surcharges and Other Special Charges.

30. **Unallocated Loss Adjustment Expense ("ULAE")** includes expenses that are not directly allocated to a specific claim.  The ULAE may be charged to You either by applying:  (a) a **Loss Conversion Factor ("LCF")** that is a factor applied to the Paid or Incurred Loss, plus Paid or Incurred ALAE; or (b) a **Claim Handling Fee ("CHF")** that is a dollar amount charged per reported claimant, as stated in the Specifications.

## F.  Payments Due

The payments under this Program and the dates these amounts become due are stated in the Specifications.  Each party to the Agreement agrees to remit all payments so that they are received on or before the due date.  If any amount is payable and a specific due date is not stated, twenty (20) days from the date of billing will be the due date.  You and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under this Agreement.

In the event all or part of a payment due under the Program is in dispute:

1. The undisputed portion of the payment will be remitted in accordance with the terms of this Agreement.
2. A written notice stating the amount and explaining the reason for the dispute will be sent to the address stated in the Specifications on or before the payment due date.

Both parties agree to attempt to resolve any dispute within sixty (60) days after the date of the notice.

## G.  Loss Fund

The initial amount of the Loss Fund is stated in the Specifications.  We reserve the right to adjust the amount of the Loss Fund at any time, but at a minimum annually.  The formula for adjustment of the Loss Fund amount is stated in the Specifications.

## H. Collateral

1. Required Letter of Credit (LOC) and Surety Bond (SB)

   LOC.  On or before the Agreement effective date, You shall give Us a clean, unconditional, irrevocable Letter of Credit ("LOC") with an automatic renewal term of twelve (12) months in the form provided by Us.  The LOC must be from a bank which is and remains acceptable to Us and is and remains listed on the most current National Association of Insurance Commissioners ("NAIC") list of Acceptable Domestic Banks or U.S. Branches or U.S. Agencies of Acceptable Foreign Institutions ("Qualified Bank"). The LOC shall comply substantially with the requirements for LOCs under New York Insurance Regulation 133 and shall be acceptable to Us.  We have provided You with the required form and parameters for the type of Collateral both parties have agreed will be used and

   SB.  On or before the Agreement effective date, You shall execute a clean, unconditional Surety Bond entered into among You, Us and a Surety provider acceptable to Us, as beneficiary (hereinafter referred to as Surety Bond).  The acceptable form of the Surety Bond will be provided by Us.  The Surety Bond issuer must at all times remain acceptable to Us, and not be a parent, subsidiary or affiliate of either You or Us ("Surety").

2. Computation, Adjustment, Amendment and Replacement of LOC and SB

   a. Amounts – LOC and SB

      The total of the LOC and the SB amounts shall be in an amount sufficient to secure Your financial obligations under this Agreement.  Collateral requirements will be reviewed periodically and We reserve the right to adjust Collateral at any time We deem necessary to secure Your obligations to Us under the Program.  The initial amounts of the LOC and the SB and how they are adjusted are stated in the Specifications.  You shall provide Us with amendments to the LOC and/or SB for any increase or decrease in the amount required within thirty (30) days of Our request.

   b. Amendments – LOC and SB

      LOC.  Wording amendments requested by Us as a result of a bank error, a policy issuing company change, regulatory changes, or changes in  New York Insurance Regulation 133 shall be provided by You within sixty (60) days of Our written or verbal request or not less than fifteen (15) days prior to the LOC expiration date, whichever is sooner and

      SB.  If We advise You that the form of the SB has been amended to meet new regulatory requirements, or there has been a policy issuing company change, etc., You shall provide Us with a replacement or amended SB in an equal or adjusted amount within fifteen (15) days of Our request.

   c. Nonrenewal of LOC

      If the issuing bank notifies Us of nonrenewal of the LOC in not less than thirty (30) days prior to its expiration You shall provide Us with a replacement LOC in an equal or adjusted amount not less than fifteen (15) days prior to its expiration date.

   d. Nonrenewal of SB

      If the Surety notifies Us of nonrenewal of the Surety Bond, You shall provide Us with a replacement Surety Bond, in an equal or adjusted amount, not less than fifteen (15) days prior to its expiration date.

   e. Issuing Bank Approval - LOC

Z000029

DocuSign Envelope ID: 11ACB8D5-02BC-4B85-9C1B-22AED5EC1482

If the issuing bank is no longer acceptable to Us or a Qualified Bank, You shall provide Us with a replacement LOC in an equal or adjusted amount from a bank that is acceptable to Us and that is approved by the NAIC.  You shall provide Us with the replacement LOC within thirty (30) days of Our request or not less than fifteen (15) days prior to its expiration date, whichever is sooner.  The LOC must be in the form provided by Us

f.  Surety Issuer Approval - SB

If the Surety is no longer acceptable to Us, You shall provide Us with a replacement Surety Bond in an equal or adjusted amount from a Surety that is acceptable to Us.  You shall provide Us with the replacement Surety Bond within thirty (30) days of Our request, or not less than fifteen (15) days prior to its expiration, whichever is sooner.  The replacement Surety Bond must be in the form provided by Us.

3.  Draws on Collateral – LOC and SB

In the event of a Default, We reserve the right to a partial or full draw on any Collateral provided by You under the provisions of this Agreement or any other agreement between You and Us to pay any amount that is due or may become due as respects any one or more of the following obligations:

a.  Any amount that is due or may become due under this Agreement;

b.  Any amount due under any other agreement You, or any other named insured under the Policy(ies), have or may have with Us or any of Our affiliates.

c.  Any amount that is due under any policy of insurance issued to You by Us or any of Our affiliates.

4.  Surrender of LOC and SB

Your duty to provide Collateral will continue until We determine that the Collateral under this Agreement is no longer required.  You understand and agree that this duty may continue even if this Agreement is terminated as provided for in Termination section of this Agreement or is otherwise cancelled

5.  Non-Renewal or Cancellation of Policy(ies) subject to this Agreement - SB

In the event the Policy(ies) are cancelled or non-renewed the SB will no longer be acceptable to Us.  And, in such an event, You agree to provide Us with an amendment to the LOC in an amount equal to that which is provided for in the SB, or such other amount as required by Us not less than fifteen (15) days prior to the effective date of the Policy(ies) cancellation or nonrenewal date.

## I.  Audit

An audit for the Policy(ies) stated in the Specifications will be conducted in accordance with the provisions of the Policy(ies).  The adjustable elements of the Program will be adjusted based on the audited exposures as stated in the Specifications.

## J.  Invalidity and Severability

It is agreed that if any provision of this Agreement is found to be invalid or unenforceable by a governmental authority or court of law, all the other provisions of this Agreement shall remain valid and enforceable as if the Agreement did not contain the invalid or unenforceable provision.  The invalid or unenforceable provision shall be amended to the

minimum extent necessary to cure the invalid or unenforceable element and to preserve the original intent.

## K. Non-Waiver of Rights

Failure by either party to enforce any provision of this Agreement shall not be interpreted as a waiver of such provision or any other provision or any existing or future rights or privileges under this Agreement.  The terms and conditions of this Agreement may be strictly enforced at any time despite any past or subsequent failure to do so by either party.

## L. Changes in this Agreement

This Agreement shall not be waived, changed or assigned except by an Addendum, signed by a duly authorized representative of each party to this Agreement.

## M. Offset

The parties under this Agreement each reserve the right to offset any undisputed balance due from one party to the other under this or any other Agreement entered into between Us, except as prohibited by law.

## N. Reliance on Others

You understand, acknowledge, and confirm that We did not offer advice to You concerning the proper financial, accounting, or tax treatment for the Policy(ies) and nothing herein should  be considered to constitute such advice.  You further represent that if accounting advice, tax advice, or other expert professional assistance is required, You will rely on Your own accountant, adviser, counsel, or other similar competent professional with expertise in the required area.

## O. Arbitration

Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and the following procedures:

1. Written notice requesting arbitration will be sent by the initiating party via certified or registered mail, return receipt requested, to the other party with the required copies to the AAA.  The notice shall state the nature of the dispute, the amount involved, if any, and the remedy sought.

2. A panel shall be made up of three arbitrators.  Each party shall select one arbitrator and the two selected arbitrators shall select an impartial third arbitrator with a commercial liability insurance background who shall preside at the hearing.

3. If either party fails to appoint its arbitrator within thirty (30) days of the delivery of the request, the other party shall send notice by certified or registered mail of its intention to appoint a second arbitrator and may do so within ten days of the appointment notice date.

4. If the two arbitrators do not select the third arbitrator within thirty (30) days of their appointment, each arbitrator shall select three candidates, or a smaller number as agreed to by the two arbitrators, from a list of qualified candidates with a commercial

Z000031

liability insurance background provided by the American Arbitration Association.  At the request of the two arbitrators, the American Arbitration Association shall select the third arbitrator from the list of candidates submitted.

5.   Arbitration shall take place in Los Angeles, California.

6.   The arbitrators shall not limit, expand or modify the terms of this Agreement nor award damages in excess of compensatory damages under this Agreement.  Such excess damages would include without limitation any form of fine or multiple, punitive or exemplary damages and each party waives any claim to such excess damages.  Confirmation of the award may be entered in any court having jurisdiction.

7.   Each party shall pay the expense of its own arbitrator and equally pay the expenses of the third arbitrator and any other expenses of the arbitration proceeding (except witnesses).  Each party shall pay its own costs of counsel and witnesses.

## P.  Termination

This Agreement will terminate by mutual written consent.  We also reserve the right to terminate this Agreement if (1) there is a material change in Your ownership or (2) one or more of the Policy(ies) stated in the Specifications is canceled.   Despite the termination of the Agreement, You are still liable for all Your obligations under this Agreement incurred up to the date of termination.  It is understood and agreed by both parties that if billings are suspended at any point in time because all payments have been made, We still reserve the right to bill You at a future date for any and all claims subsequently reported, together with related expenses.

In the event of a mid-term termination of the Program, (a) the Agreement will follow the cancellation provisions of the Policy(ies); and (b) the calculation of the applicable Program elements, including but not limited to the Deductible Premium, Excess Premium, Terrorism Premium, CAT Premium, Basic Premium and the Combined Aggregate, will be subject to the minimum amounts stated in the Specifications.

In the event of a Default or a material change in Your ownership, or if one or more of the Policy(ies) stated in the Specifications is canceled, We may, at Our option, terminate the financing portion of the Program.  The amount immediately due and payable to Us will be determined by Us using all of Your obligations under this Agreement calculated using the most recent incurred loss valuation times the applicable LDF determined by Us at Our sole discretion at the time of termination; in addition to the foregoing, if termination is because of Your failure to pay any amount or provide any Collateral required under this Agreement, We may instead require, at Our option, payment of the full Standard Premium by converting the Program to a guaranteed cost rating plan using Our manual rates in effect as of the Policy(ies) effective date.

## Q.  Governing Law And Jurisdiction

This Agreement shall be governed by and interpreted in accordance with the laws of the State of California without regard to its choice of law doctrine.

The parties have caused this Agreement, effective as of the date first written above, to be
executed by their duly authorized representatives.

**GUESS?, INC.**

By: _Todd Marumoto_
        4CDA64C60D16463...

Title: VP Risk Management

Date: 7/26/2021

**ZURICH AMERICAN INSURANCE COMPANY**

By: _George Gruff_
        1FC77B34B46F4AD...

Title: Underwriter

Date: 7/22/2021

**AMERICAN ZURICH INSURANCE COMPANY**

By: _George Gruff_
        1FC77B34B46F4AD...

Title: Underwriter

Date: 7/22/2021

INTERNAL USE ONLY

Z000033

**SPECIFICATIONS TO PAID DEDUCTIBLE AND
PAID LOSS RETROSPECTIVE AGREEMENT
BETWEEN
GUESS?, INC.
AND
AMERICAN ZURICH INSURANCE COMPANY ("AZIC")
ZURICH AMERICAN INSURANCE COMPANY ("ZAIC")**

**Specifications Effective Date: May 1, 2020**

**A.  Deductible Policy(ies)**

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| WC | AZIC | WC 0152757-02 | 5/1/2021 |
| GL | ZAIC | GLO 0152759-02 | 5/1/2021 |

**B.  Retrospective Premium Policy(ies)**

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| WC | ZAIC | WC 0152758-02 | 5/1/2021 |

**C.  Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to the coverages provided under the Policy(ies):

1.  The first **$350,000** under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

2.  The first **$350,000** under WC coverage arising out of occupational disease payable to each affected employee.

3.  The first **$350,000** under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

4.  The first **$350,000** under EL coverage arising out of occupational disease payable to each affected employee.

5.  The first **$150,000** for each occurrence, claim, offense, accident, act, error or omission or any other such similar event as defined or used in the policy for each of the coverages that involves Coverages A, B, C or any other coverage provided under the  Commercial General Liability Policy(ies).

6.  With respect to 1 through 5 above, the amount of ALAE that You are obligated to pay Us will be determined as follows:

    ALAE is included within the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the ALAE excess of the Loss Limit.

**D.  Deductible Policy(ies)**

**1. Deductible Premium**

You are obligated to pay Us Deductible Premium.  The Deductible Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Deductible Policy. The Deductible Premium stated below is an estimated amount which will be adjusted and is payable

to Us at the time We issue the premium audit bill. In no event will the amount of the Deductible Premium be less than the Minimum Premium stated below.

| Policy(ies) | Exposure Base | Rate | Estimated Exposure | Deductible Premium | Minimum Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll including Retro states excluding stop gap | $0.150447 per $100 | $120,056,830 | $180,622 | $162,559 |
| GL | US Sales | $0.165046 per $1,000 | $563,550,769 | $93,012 | $93,012 |

**E. Retrospective Premium Policy(ies)**

1. **Standard & Deposit Premiums – Retrospective Premium Policy(ies)**

   You are obligated to pay Us the Deposit Premium. The Deposit Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Retrospective Premium Policy. In no event will the amount of Deposit Premium be less than the Deposit Premium amount stated below. The Standard Premium stated below is an estimated amount. The premium audit billing will be deferred until We issue the first Retrospective Premium Adjustment billing.

| Policy(ies) | Exposure Base | Standard Premium Rate | Estimated Exposure | Standard Premium | Deposit Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | As stated in policy | $997,245 | $7,373 | $0 |

2. **Retrospective Premium Elements**

   a. Basic Premium

| Estimate At Inception | | Adjustable at Audit | | |
|---|---|---|---|---|
| Basic Premium Amount | Estimated Exposure | Rate | Exposure Base | Basic Premium shall never be less than |
| $0 | $997,245 | $0.00 per $100 | Audited Payroll excluding stop gap | $0 |

   You are obligated to pay Us the adjusted Basic Premium amount times the Tax Multiplier.

   b. Tax Multiplier

   The Tax Multiplier is based on Our current rates and is not adjustable.

   The following are the rates charged based on the state distribution of Your premium:

| Policy(ies) | Tax Multiplier |
|---|---|
| WC/EL | 1.0593 |

DocuSign Envelope ID: 11A9B8D5-02BC-4B85-9C1B-22AED5EC1482

   c.  Terrorism Premium and CAT Premium

     You are obligated to pay Us the adjusted amount for Terrorism Premium and CAT Premium upon Our issuance of the first Retrospective Premium Adjustment billing.

   d.  Premium Surcharges and Other Special Charges

     You are obligated to pay Us the adjusted amount for Premium Surcharges and Other Special Charges at each Retrospective Premium Adjustment billing.

**3.  Earned Retrospective Premium Formula**

For purposes of calculating the Earned Retrospective Premium, the following formula applies:

Formula:  $\{((IL + IALAE) \times LCF^*) + TPAF^{**} + Basic\ Premium\} \times TM = ERP$

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.
**TPAF paid by Us.

**4.  Retrospective Premium Adjustment**

   a.  **Retrospective Premium Adjustment Billings**

     You are obligated to pay Us each Retrospective Premium Adjustment billing.  We will calculate a Retrospective Premium Adjustment billing beginning with losses valued eighteen (18) months after the Specifications Effective Date and, at a minimum, annually thereafter.  Each Retrospective Premium Adjustment billing will be calculated as follows:

     The sum of:
     1.  Earned Retrospective Premium (ERP), plus
     2.  audited Terrorism Premium and CAT Premium, plus
     3.  Premium Surcharges and Other Special Charges.

     Less the sum of the following:

     4.  Billings for Deposit Premium for the Policy(ies) stated in Section E. 1., plus
     5.  Payments made within the Loss Limit(s), according to Our records, by the TPA, plus
     6.  Loss Billings by Us, plus
     7.  Terrorism Premium and CAT Premium billings, plus
     8. Prior Earned Retrospective Premium billings, plus
     9. the sum of Loss Reserves and ALAE Reserves times LCF*  all sums times the Tax Multiplier, plus
     10. Premium Surcharges and Other Special Charges billings.

     *If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.

     At each Retrospective Premium Adjustment billing, You will pay the premium due Us within twenty (20) days of the billing date. Retrospective Premium Adjustment billings shall continue until We suspend billings when all losses have been paid.

**F.  Combined Elements**

   1.  **Terrorism Premium And Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program)**

     a.  You are obligated to pay Us a Terrorism Premium charge for risk of loss resulting from terrorism and Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program) and hereinafter referred to as CAT Premium.

Z000036

b. Terrorism Premium and CAT Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Policy .

c. Terrorism Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill.  Terrorism Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing.

    1.  The WC Terrorism Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

    2.  The GL Terrorism Premium is included in the GL Premium or the GL rate stated elsewhere in these Specifications and is subject to audit.

d. CAT Premium applies with respect to WC Policy(ies) only.  CAT Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill. CAT Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing. CAT Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

## 2. **Third Party Administrator ("TPA")**

At Your request, a TPA has been selected to perform claim handling and claim administration services.

a. The TPA is Gallagher Bassett Services, Inc.

b. We are ultimately responsible for these services.  Therefore, We reserve the right to terminate the TPA at Our discretion.

c. You are obligated to pay the TPA for all TPAF.  If You fail to pay the TPA for any TPAF and the TPA bills Us, You are obligated to pay Us for the sums paid by Us to the TPA. Unless otherwise stated on the invoice, this amount will be Due on Demand.

d. If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for an LCF of 1.12 as stated elsewhere in these Specifications.  Unless otherwise stated on the invoice, this amount will be Due on Demand.

## 3. **Loss Billings**

a. The TPA will bill You directly for Paid Losses, Paid ALAE and TPAF. You are obligated to pay these sums directly to the TPA.

b. If for any reason We assume those payment obligations, or We assume the claim handling and administration services, We will bill You monthly.  You are obligated to pay Us for the following:

    1.  With respect to Deductible Policy(ies),

        a.  Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,
        b.  less Recoveries within the Loss Limit(s) credited during the month,
        c.  times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,
        d.  plus the TPAF paid by Us.

    2.  With respect to Retrospective Premium Policy(ies),

DocuSign Envelope ID: 11ACB8D5-02BC-4B85-9C1B-22AFD5EC1482

    a. Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,

    b. less Recoveries within the Loss Limit(s) credited during the month,

    c. times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,

    d. plus the TPAF paid by Us,

    e. times the Tax Multiplier.

Loss Billings shall continue until either i) We suspend billings when all losses have been paid or ii) the conversion of the Loss Billings resulting in an alternate method of payment as may be provided for in the Loss Billing Conversion section of these Specifications with respect to Deductible Policy(ies) and the Retrospective Premium Adjustment section of these Specifications with respect to Retrospective Premium Policy(ies).

### 4. Premium Surcharges and Other Special Charges

    a. Premium Surcharges

    You are obligated to pay Us Premium Surcharges in addition to the Deposit Premiums. These sums are payable to Us as stated in the Policy(ies.)

    You are obligated to pay Us for Premium Surcharges which apply in any jurisdiction in which exposure exists or where exposure develops under the Policy(ies). Premium Surcharges are subject to change without prior notice. Premium Surcharges will be billed by Us based upon rates according to applicable regulatory or statutory requirements.

    You will be billed and are obligated to pay Us for additional Premium Surcharges at the time We issue the premium audit billing for the Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at each Retrospective Premium Adjustment billing.

    The applicable Premium Surcharges may apply to, but are not limited to, the following: Deductible Premium, Standard Premium, Earned Retrospective Premium, Excess Premium, Terrorism Premium, CAT Premium and audited exposures.

    b. Other Special Charges

    You are obligated to pay Us for Other Special Charges. You will be billed for Other Special Charges at the time We issue the premium audit billing for Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at the time We issue each Retrospective Premium Adjustment billing unless otherwise required by law. We will provide You with information about the purpose of the charges and, as applicable, the amount of the charge and the application thereof. You will be billed based upon the information provided.

### 5. Loss Fund

    a. You are obligated to pay the Loss Fund to the TPA. The TPA will bill You directly and hold and adjust the Loss Fund.

    b. If for any reason You fail to fund the TPA's Loss Fund requirements, You are obligated to pay Us an amount equal to the Loss Fund billed to Us by the TPA.

    c. If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for the Loss Fund as follows:

        1. Paid Losses within the Loss Limit(s) and applicable Paid ALAE for 12 months prior to the adjustment date,

        2. times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,

Z000038

DocuSign Envelope ID: 11AC88D5-02BC-4B85-9C1B-22AED5EC1482

    3.   divided by 12 equals the monthly average payment,
    4.   monthly average payment times 2.5 equals the adjusted Loss Fund,
    5.   Required/Amended Loss Fund less Loss Fund held equals the additional or return amount due.

d.  Adjustments of the Loss Fund will be computed, at a minimum, annually after the Specifications Effective Date.  We may adjust the Loss Fund at any time We determine that the amount We require is greater than the Loss Fund amount on hand.

e.  At the time of each Loss Fund adjustment, payment by You will be due within twenty (20) days of the billing date; payment by Us will be credited to Your subsequent Loss Billing. When We have determined that We no longer require a Loss Fund, the remaining balance in the Loss Fund will be returned to You.

6.  **Collateral**

| | |
|---|---|
| Collateral on hand: | $900,000 |
| Adjustment: | $500,000 |
| Required/Amended Collateral amount: | $1,400,000 |

a.  The Required/Amended Collateral amount stated above is due on or before the Specifications Effective Date.  Collateral requirements will be reviewed periodically and We reserve the right to require additional Collateral at any time We deem necessary to secure Your obligations to Us under the Program.

b.  The adjustment of the Collateral will include, but not be limited to, the sum of i. and ii. below:

   i)   With respect to the Retrospective Premium Policy(ies):
      a.) Ultimate Retrospective Premium,
      b.) less the sum of amounts billed within the Loss Limit(s) by the TPA,
      c.) less the sum of amounts billed by Us for all deposit amounts, premium audits, Loss Billings and Retrospective Premium Adjustment billings.
  ii)  With respect to the Deductible Policy(ies):
      a.) Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE,
      b.) times the applicable LDF,
      c.) times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,
      d.) plus the TPAF billed by Us,
      e.) less the sum of amounts billed within the Loss Limit(s) by the TPA,
      f.)  less the sum of amounts billed by Us for Loss Billings and TPAF.

7.  **Notices**

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:             Guess?, Inc.

Address:              144 South Alameda Street
Los Angeles, CA 90021
Attention:  Todd Marumoto

Telephone:         213-765-5788

Z000039

If to Us:          Zurich American Insurance Company

                   American Zurich Insurance Company

Address:           777 South Figueroa Street, Suite 3900
                   Los Angeles, CA 90017
                   Attention: George Gruff

Telephone:         213-270-0836

The parties have caused the Specifications, effective **May 1, 2020** to be signed by their duly
authorized representatives.

**GUESS?, INC.**

By: _Todd Marumoto_
    4CDA64C60D16483...

Title: VP Risk Management

Date: 7/26/2021

**ZURICH AMERICAN INSURANCE COMPANY**

By: _George Gruff_
    1FC77B34B46F4AD...

Title: Underwriter

Date: 7/22/2021

**AMERICAN ZURICH INSURANCE COMPANY**

By: _George Gruff_
    1FC77B34B46F4AD...

Title: Underwriter

Date: 7/22/2021

Z000040

**Ancillary Agreement Number:** 0152757

**Original Deductible and Retrospective Premium Policy(ies)**

| Insured | Line of Business | Original Policy Number(s) | Agreement Effective Date | Issuing Company |
|---|---|---|---|---|
| GUESS?, INC. | WC | WC 0152757-03 | 5/1/2021 | AZIC |
| | WC | WC 0152758-03 | 5/1/2021 | ZAIC |
| | GL | GLO 0152759-03 | 5/1/2021 | ZAIC |

### PAID DEDUCTIBLE AND PAID LOSS RETROSPECTIVE AGREEMENT

This Agreement, effective on the **1st** day of **May, 2021**, between **Guess?, Inc.** (referred to as "You" and "Your") and **Zurich American Insurance Company** and **American Zurich Insurance Company** (collectively referred to as "We," "Us" and "Our").

### TERMS AND CONDITIONS

#### A. Purpose of the Agreement

The purpose of this Agreement is to outline (a) the scope, description and structure of the Paid Deductible and the Paid Loss Retrospective Premium (collectively referred to as the "Program") You and We have entered into and (b) the duties and obligations of each party with respect to this Program.

#### B. Scope of the Agreement

The Policy(ies) for each line of business issued by the applicable insurance company, including all endorsements, extensions, renewals and/or rewrites, subject to this Agreement are stated in the Specifications.

This Agreement has two parts: Terms and Conditions and Specifications. Each part of the Agreement will be signed by both parties. The Agreement term is continuous and will be amended for each Program change by adding new Specifications, effective on the date of the change, and signed by both parties.

This Agreement governs the structure and operation of and the duties and obligations of each party to this Program. By executing this agreement, you acknowledge that we provided you with a "NOTICE OF DISPUTE RESOLUTION TERMS TO BE INCLUDED IN CERTAIN AGREEMENTS PURSUANT TO CALIFORNIA INSURANCE CODE SECTION 11658.5" and that the terms of this Agreement reflect the final agreement to You and Us relating to the resolution of disputes under this Agreement.

#### C. Program Description

Under the Program, at Your request, a Third Party Administrator ("TPA") has been selected to handle and pay the claims presented in accordance with the provisions of the Policy(ies). You will be billed for the claim payments within the Loss Limit(s), plus related expenses and assessments, as stated in the Specifications. You agree to and shall remit to Us all amounts when due, as stated in the Specifications. A Loss Fund will be required so that funds are available to pay Your obligations within the Loss Limit(s). The amount and operation of the Loss Fund are stated in the Specifications.

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D056EAA4AD

.

The Earned Retrospective Premium is calculated and adjusted based on Your loss experience at specified loss valuation dates after the expiration of the Policy(ies) until such time as, if applicable, the Combined Aggregate amount is reached.

As a consequence of providing You with a risk financing arrangement under this Program, We assume a financial risk for which We may require Collateral.  The initial amount of the Collateral and how the amount may be adjusted is stated in the Specifications.

## D.  Program Structure

The Program has two primary, independent components: (1) the insurance coverage provided under the Policy(ies); and (2) the risk financing arrangement provided under the Program.

As set out below in "Termination", if You Default, We may, at Our option, terminate the financing arrangements under the Program.  This will result in all of Your financial obligations under the Program becoming immediately due and payable to Us.

## E.  Definitions

1.  **Allocated Loss Adjustment Expense ("ALAE")** unless otherwise defined in the policy shall be an expense directly allocable to a specific claim including but not limited to: all supplementary payments; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

2.  **ALAE Reserve** is Our evaluation of unpaid ALAE under the Policy(ies).

3.  **Basic Premium** is an amount representing Our expenses under the Retrospective Premium Policy(ies).

4.  **Collateral** is a financial instrument provided by You to secure the deferral of Your financial obligations under the Program.

5.  **Combined Aggregate** is the greatest amount You are obligated to reimburse Us for under the Deductible Policy(ies) and the Retrospective Premium Policy(ies) which shall apply as stated in the Specifications for the term of the Policy(ies) stated in the Specifications.

6.  **Combined Elements** shall include certain common elements that involve the Deductible Policy(ies)   and the Retrospective Premium Policy(ies) that apply to the Program.

7.  **Deductible Amount(s)** is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Policy(ies) as stated in the Specifications.

8.  **Deductible Premium** is the amount paid by You to Us for the Deductible Policy(ies)**.**

9.  **Default** occurs when

Z000042

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D056E5AA4AD

a. You fail to pay any amount, including but not limited to the initial Loss Fund amount and subsequent adjustments, when it is due under any Agreement or any policy issued by Us to You,

b. You file a petition in bankruptcy, a declaration of insolvency or an action or proceeding for dissolution is filed by or against You; a receiver or trustee is appointed for You; You execute a workout agreement; You make an assignment for the benefit of creditors; or any other proceeding or arrangement of a similar nature is instituted by or against You, or

c. You fail to provide the initial, adjusted, amendments to or replacement Collateral as required in this Agreement.

10. **Due on Demand** is when a payment is due Us at the time the bill is presented to You.

11. **Earned Retrospective Premium ("ERP")** is the premium that is calculated at a Retrospective Premium Adjustment.

12. **Earned Retrospective Premium Formula** is the method of calculating the Retrospective Premium as stated in the Specifications

13. **Excess Premium** is the premium You pay to Us for limiting the losses You are obligated to reimburse Us for to the Loss Limit(s) and for Our assumption of the risk transfer excess of the Loss Limit(s) up to the limits of liability under the Policy(ies).

14. **Incurred ALAE ("IALAE")** is the Paid ALAE plus the ALAE Reserve under the Policy(ies).

15. **Incurred Loss ("IL")** is a Paid Loss plus a Loss Reserve under the Policy(ies).

16. **Loss Based Assessment ("LBA")** is a state charge levied against losses.

17. **Loss Conversion Factor ("LCF")** is a factor applied to the Paid or Incurred Loss, plus Paid or Incurred ALAE.

18. **Loss Development Factor ("LDF")** is a multiplier set by Us at Our sole discretion to evaluate (a) claims and related ALAE that have occurred but have not as yet been reported to You or to Us; and, (b) anticipated changes in Incurred Loss and Incurred ALAE for claims that have been previously reported to Us. How and when the LDF is applied shall be as stated in the Specifications.

19. **Loss Fund** is a non-interest bearing account where Your funds are held by Us or a TPA to provide for the payment of Your obligations within the Loss Limit(s) under the Policy(ies) prior to Your reimbursing Us or the TPA.

20. **Loss Limit(s)** is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Retrospective Premium Policy(ies) and the Deductible Policy(ies) stated in the Specifications. Under this Agreement, the term Loss Limit(s) shall also include Deductible Amount(s).

21. **Loss Reserve** is Our evaluation of the unpaid portion of a claim that has been previously reported to Us under the Policy(ies) and does not include ALAE Reserve.

22. **Other Special Charges** are (a) additional taxes, premium surcharges and premium and loss assessments incurred or paid by Us in connection with the Policy(ies); (b) administrative, statutory or court-ordered fines or penalties incurred or paid by Us in connection with the Policy(ies) not the result of Our negligence; (c) any expenses We incur to collect from You amounts past due and to enforce any of the provisions of this Agreement, except as provided for in Section O of the Terms and Conditions of this Agreement; and (d) any other charge, loss or expense paid or incurred by Us in connection with the Policy(ies) that does not constitute a loss payment under the

Z000043

Policy(ies), ALAE, Loss Based Assessments, Premium Tax, Premium Surcharges or payments to a TPA

23. **Paid ALAE** is a payment made by Us for ALAE under the Policy(ies).

24. **Paid Loss** is a payment made by Us for a claim under the Policy(ies). Paid Loss does not include ALAE.

25. **Policy(ies)** shall mean those Policy(ies) stated in Sections A and B of the Specifications.

26. **Premium Surcharges** are surcharges and assessments by federal, state, city, municipal or other governmental agencies or required by regulation or statute, that are levied on the basis of premiums and include new premium surcharges and assessments that are levied after the Specifications Effective Date and premium surcharges and assessments for which the rate or computation base changes after the Specifications Effective Date.

27. **Premium Tax** includes state taxes and assessments that (1) under the Deductible Policy(ies) is a rate that may be charged against the full state Standard Premium or the Deductible Premium and (2) under the Retrospective Premium Policy(ies) are expressed as Tax Multiplier(s) which is(are) charged within the Earned Retrospective Premium Formula as stated in the Specifications..

28. **Recoveries** are that portion of any payment made under the Policy(ies) that We recover from anyone liable for the loss or from any workers compensation funds. The amount We recover will be applied as follows: (a) first, to any payments made by Us in excess of the Loss Limit(s); and, (b) then the remainder, if any, will be applied to reduce the Loss Limit(s) reimbursable by You.

29. **Standard Premium** for Workers' Compensation and Employers' Liability (WC/EL) is calculated in accordance with the National Council on Compensation Insurance and/or specific state rules using Our manual rates times the exposure times the experience modification times schedule rating modification and/or deviations. With respect to insurance coverages other than WC/EL, standard premium includes the premium We would charge for the Program term subject to the terms of the rating plan.

30. **Third Party Administrator ("TPA")** is a licensed claims administrator that We have selected at Your request to handle and pay the claims presented in accordance with the provisions of the Policy(ies).

31. **TPA Fees ("TPAF")** are fees charged by a TPA engaged by Us under this Agreement to provide claim handling and administration services.

32. **Ultimate Retrospective Premium** is Our evaluation of the ultimate Earned Retrospective Premium based on currently valued losses times the applicable LDF plus the following: Excess Premium, Terrorism Premium, CAT Premium, Premium Surcharges and Other Special Charges.

## F. Payments Due

The payments under this Program and the dates these amounts become due are stated in the Specifications. Each party to the Agreement agrees to remit all payments so that they are received on or before the due date. If any amount is payable and a specific due date is not stated, twenty (20) days from the date of billing will be the due date You and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under this Agreement.

In the event all or part of a payment due under the Program is in dispute:

Z000044

DocuSign Envelope ID: 65C5E8E9-FFA2-415A-86EB-55D056E5AA4AD

1. The undisputed portion of the payment will be remitted in accordance with the terms of this Agreement.
2. A written notice stating the amount and explaining the reason for the dispute will be sent to the address stated in the Specifications on or before the payment due date.

Both parties agree to attempt to resolve any dispute within sixty (60) days after the date of the notice.

## G. Loss Fund

The initial amount of the Loss Fund is stated in the Specifications.  We or the TPA reserve the right to adjust the amount of the Loss Fund at any time, but at a minimum annually.  The formula for adjustment of the Loss Fund amount is stated in the Specifications.

## H. Collateral

### 1. Required Collateral

On or before the Agreement effective date, You shall provide Us with the required Collateral in a form and amount acceptable to Us.

a. Computation, Adjustment, Amendment and Replacement of Collateral

The Collateral shall be in an amount sufficient to secure Your financial obligations under this Agreement.  Collateral requirements will be reviewed annually, and We reserve the right to adjust Collateral at any time We deem necessary to secure Your obligations to Us under the Program.  The initial amount of the Collateral and how it is adjusted are stated in the Specifications.

b. Draws on Collateral

In the event of a Default, We reserve the right to a partial or full draw on any Collateral provided by You under the provisions of this Agreement or any other agreement between You and Us to pay any amount that is due or may become due as respects any one or more of the following obligations:

i. Any amount that is due or may become due under this Agreement;

ii. Any amount due under any other agreement You, or any other named insured under the Policy(ies), have or may have with Us or any of Our affiliates and

iii. Any amount that is due under any policy of insurance issued to You by Us or any of Our affiliates.

c. Return of Collateral

Your duty to provide Collateral will continue until We determine that the Collateral under this Agreement is no longer required.  You understand and agree that this duty may continue even if this Agreement is terminated as provided for in Termination section of this Agreement or is otherwise cancelled.

### 2. Letters of Credit (LOC)

If collateral is provided in the form of a Letter of Credit (LOC), You shall give Us a clean, unconditional, irrevocable Letter of Credit ("LOC") with an automatic renewal term of twelve (12) months in the form provided by Us.  The LOC must be from a bank which is and remains acceptable to Us and is and remains listed on the most current National Association of Insurance Commissioners ("NAIC") list of Acceptable Domestic Banks or U.S. Branches or U.S. Agencies of Acceptable Foreign Institutions ("Qualified Bank").  The LOC shall comply substantially with the requirements for LOCs under New York

Z000045

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D056E5A4AD

Insurance Regulation 133 and shall be acceptable to Us.  We have provided You with the required form and parameters for the type of Collateral both parties have agreed will be used.

Computation, Adjustment, Amendment and Replacement of LOC

a.  Amounts

The LOC amount shall be in an amount sufficient to secure Your financial obligations under this Agreement.  Collateral requirements will be reviewed annually, and We reserve the right to adjust Collateral at any time We deem necessary to secure Your obligations to Us under the Program. The initial amount of the LOC and how it is adjusted are stated in the Specifications.  You shall provide Us with an amendment to the LOC for any increase or decrease in the amount required within thirty (30) days of Our request.

b.  Amendments to the LOC

You shall provide Us with an amendment to the LOC for any increase or decrease in the amount required within thirty (30) days of Our request.

Wording amendments requested by Us as a result of a bank error, a policy issuing company change, regulatory changes, or changes in  New York Insurance Regulation 133  shall be provided by You within sixty (60) days of Our written or verbal request or not less than fifteen (15) days prior to the LOC expiration date, whichever is sooner.

c.  Nonrenewal of LOC

If the issuing bank notifies Us of nonrenewal of the LOC in not less than thirty (30) days prior to its expiration You shall provide Us with a replacement LOC in an equal or adjusted amount not less than fifteen (15) days prior to its expiration date.

d.  Issuing Bank Approval

If the issuing bank is no longer acceptable to Us or a Qualified Bank, You shall provide Us with a replacement LOC in an equal or adjusted amount from a bank that is acceptable to Us and that is approved by the NAIC.  You shall provide Us with the replacement LOC within thirty (30) days of Our request or not less than fifteen (15) days prior to its expiration date, whichever is sooner.  The LOC must be in the form provided by Us. Required Letter of Credit

3.  **Assets in Trust**

If collateral is provided in the form of a Trust, on or before the Agreement effective date, You shall execute a clean, unconditional trust agreement entered into among You, Us and a bank, as trustee, that creates a trust account holding assets acceptable to Us, as beneficiary (hereinafter referred to as Assets in Trust or AT).   The form of the trust agreement will be provided by Us.  The bank must at all times remain acceptable to Us, be either a member of the Federal Reserve System or a New York State-chartered bank or trust company, and not be a parent, subsidiary or affiliate of either You or Us ("Qualified Bank").

Computation, Adjustment, Amendment and Replacement of AT

a.  Amounts

Z000046

The AT amount shall be in an amount sufficient to secure Your financial obligations under this Agreement.  Collateral requirements will be reviewed annually, and We reserve the right to adjust the amount of the Collateral at any time We deem necessary to secure Your obligations to Us under the Program. The initial amount of the AT and how it is adjusted are stated in the Specifications.  You shall provide Us with an amendment to the AT for any increase or decrease in the amount required within thirty (30) days of Our request.

b. Amendments

If We advise You that the form of the trust agreement has been amended to meet new regulatory requirements, there has been a policy issuing company change, etc., You shall provide Us with a replacement or amended trust agreement holding assets in an equal or adjusted amount within sixty (60)  days of Our request.

c. Removal of Trustee

If the bank is removed by You as trustee, You must give Us at least ninety (90) days written notice prior to the effective date of removal; provided, however, no such removal shall be effective until a successor trustee is appointed and approved by You and Us and all the assets in the trust have been duly transferred to the new trustee.

d. Issuing Bank Approval

If the trustee bank is no longer acceptable to Us or a Qualified Bank, You shall provide Us with a replacement trust agreement holding assets in an equal or adjusted amount from a bank that is acceptable to Us and that is a Qualified Bank. You shall provide Us with the replacement trust agreement within sixty (60) days of Our request.  The replacement trust agreement must be in the form provided by Us.

4. **Surety Bond**

If collateral is provided in the form of a Surety Bond,  You shall execute a clean, unconditional Surety Bond entered into among You, Us and a Surety provider acceptable to Us, as beneficiary (hereinafter referred to as Surety Bond).  The acceptable form of the Surety Bond will be provided by Us.  The Surety Bond issuer must at all times remain acceptable to Us, and not be a parent, subsidiary or affiliate of either You or Us ("Surety").

Computation, Adjustment, Amendment and Replacement of Surety Bond

a. Amounts

The Surety Bond amount shall be in an amount sufficient to secure Your financial obligations under this Agreement.  Collateral requirements will be reviewed annually, and We reserve the right to adjust the amount of the Collateral at any time We deem necessary to secure Your obligations to Us under the Program. The initial amount of the Surety Bond and how it is adjusted are stated in the Specifications.  You shall provide Us with an amendment to the Surety Bond for any increase or decrease in the amount required within thirty (30) days of Our request.

b. Amendments

Z000047

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D056E5AA4AD

If We advise You that the form of the Surety Bond has been amended to meet new regulatory requirements, or there has been a policy issuing company change, etc., You shall provide Us with a replacement or amended Surety Bond in an equal or adjusted amount within thirty (30) days of Our request.

c.  Nonrenewal of Surety Bond

If the Surety notifies Us of nonrenewal of the Surety Bond, You shall provide Us with a replacement Surety Bond, in an equal or adjusted amount, not less than fifteen (15) days prior to its expiration date.

d.  Surety Issuer Approval

If the Surety is no longer acceptable to Us, You shall provide Us with a replacement Surety Bond in an equal or adjusted amount from a Surety that is acceptable to Us. You shall provide Us with the replacement Surety Bond within thirty (30) days of Our request, or not less than fifteen (15) days prior to its expiration, whichever is sooner. The replacement Surety Bond must be in the form provided by Us.

5.  **Termination**

If You or We non-renew or cancel the Policy(ies) or We terminate this Agreement, We may require that theTrust and Surety Bond be replaced with a Letter of Credit in an amount equal to the Trust and Surety Bond Amount. You shall deliver to Us the required Letter of Credit within thirty (30) calendar days of the cancellation, termination or non-renewal date.

## I.  Audit

An audit for the Policy(ies) stated in the Specifications will be conducted in accordance with the provisions of the Policy(ies). The adjustable elements of the Program will be adjusted based on the audited exposures as stated in the Specifications.

## J.  Invalidity and Severability

It is agreed that if any provision of this Agreement is found to be invalid or unenforceable by a governmental authority or court of law, all the other provisions of this Agreement shall remain valid and enforceable as if the Agreement did not contain the invalid or unenforceable provision. The invalid or unenforceable provision shall be amended to the minimum extent necessary to cure the invalid or unenforceable element and to preserve the original intent.

## K.  Non-Waiver of Rights

Failure by either party to enforce any provision of this Agreement shall not be interpreted as a waiver of such provision or any other provision or any existing or future rights or privileges under this Agreement. The terms and conditions of this Agreement may be strictly enforced at any time despite any past or subsequent failure to do so by either party.

## L.  Changes in this Agreement

This Agreement shall not be waived, changed or assigned except by an Addendum, signed by a duly authorized representative of each party to this Agreement.

## M.  Offset

Z000048

DocuSign Envelope ID: 65C5E8E9-FFA2-415A-86EB-55D0566EAA4AD

The parties under this Agreement each reserve the right to offset any undisputed balance due from one party to the other under this or any other Agreement entered into between Us, except as prohibited by law.

## N. Reliance on Others

You understand, acknowledge, and confirm that We did not offer advice to You concerning the proper financial, accounting, or tax treatment for the Policy(ies) and nothing herein should be considered to constitute such advice. You further represent that if accounting advice, tax advice, or other expert professional assistance is required, You will rely on Your own accountant, adviser, counsel, or other similar competent professional with expertise in the required area.

## O. Arbitration

Any dispute arising out of the interpretation, performance or alleged breach of this Agreement, shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and the following procedures:

1. Written notice requesting arbitration will be sent by the initiating party via certified or registered mail, return receipt requested, to the other party with the required copies to the AAA. The notice shall state the nature of the dispute, the amount involved, if any, and the remedy sought.

2. A panel shall be made up of three arbitrators. Each party shall select one arbitrator and the two selected arbitrators shall select an impartial third arbitrator with a commercial liability insurance background who shall preside at the hearing.

3. If either party fails to appoint its arbitrator within thirty (30) days of the delivery of the request, the other party shall send notice by certified or registered mail of its intention to appoint a second arbitrator and may do so within ten days of the appointment notice date.

4. If the two arbitrators do not select the third arbitrator within thirty (30) days of their appointment, each arbitrator shall select three candidates, or a smaller number as agreed to by the two arbitrators, from a list of qualified candidates with a commercial liability insurance background provided by the American Arbitration Association. At the request of the two arbitrators, the American Arbitration Association shall select the third arbitrator from the list of candidates submitted.

5. Arbitration shall take place in Los Angeles, California.

6. The arbitrators shall not limit, expand or modify the terms of this Agreement nor award damages in excess of compensatory damages under this Agreement. Such excess damages would include without limitation any form of fine or multiple, punitive or exemplary damages and each party waives any claim to such excess damages. Confirmation of the award may be entered in any court having jurisdiction.

7. Each party shall pay the expense of its own arbitrator and equally pay the expenses of the third arbitrator and any other expenses of the arbitration proceeding (except witnesses). Each party shall pay its own costs of counsel and witnesses.

## P. Termination

This Agreement will terminate by mutual written consent. We also reserve the right to terminate this Agreement if (1) there is a material change in Your ownership or (2) one or

Z000049

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D0565EAA4D

more of the Policy(ies) stated in the Specifications is canceled.   Despite the termination of the Agreement, You are still liable for all Your obligations under this Agreement incurred up to the date of termination.  It is understood and agreed by both parties that if billings are suspended at any point in time because all payments have been made, We still reserve the right to bill You at a future date for any and all claims subsequently reported, together with related expenses.

In the event of a mid-term termination of the Program, (a) the Agreement will follow the cancellation provisions of the Policy(ies); and (b) the calculation of the applicable Program elements, including but not limited to the Deductible Premium, Excess Premium, Minimum Retrospective Premium, Maximum Retrospective Premium, Combined Aggregate, Terrorism Premium, CAT Premium, Basic Premium and the Combined Aggregate, will be subject to the minimum amounts stated in the Specifications.

In the event of a Default or a material change in Your ownership, or if one or more of the Policy(ies) stated in the Specifications is canceled, We may, at Our option, terminate the financing portion of the Program.  The amount immediately due and payable to Us will be determined by Us using all of Your obligations under this Agreement calculated using the most recent incurred loss valuation times the applicable LDF determined by Us at Our sole discretion at the time of termination; in addition to the foregoing if termination is because of Your failure to pay any amount or provide any Collateral required under this Agreement, We may instead require, at Our option, payment of the full Standard Premium by converting the Program to a guaranteed cost rating plan using Our manual rates in effect as of the Policy(ies) effective date.

## Q. Governing Law And Jurisdiction

This Agreement shall be governed by and interpreted in accordance with the laws of the State of California without regard to its choice of law doctrine.

Z000050

The parties have caused this Agreement to be signed by their duly authorized representatives.

**GUESS?, INC.**

By: _Todd Marumoto_
    ⎿4CDA64C60D16463...

Title: VP Risk Management

Date: 7/26/2021

**ZURICH AMERICAN INSURANCE COMPANY**

By: _George Gruff_
    ⎿1FC77B34B46F4AD...

Title: Underwriter

Date: 7/22/2021

**AMERICAN ZURICH INSURANCE COMPANY**

By: _George Gruff_
    ⎿1FC77B34B46F4AD...

Title: Underwriter

Date: 7/22/2021

Z000051

**SPECIFICATIONS TO PAID DEDUCTIBLE AND
PAID LOSS RETROSPECTIVE AGREEMENT
BETWEEN
GUESS?, INC.
AND
AMERICAN ZURICH INSURANCE COMPANY ("AZIC")
ZURICH AMERICAN INSURANCE COMPANY ("ZAIC")**

**Ancillary Agreement Number:** 0152757

**Specifications Effective Date:** May 1, 2021

**A.  Deductible Policy(ies)**

| Insured | Line of Business | Policy Number | Expiration Date | Issuing Company |
|---|---|---|---|---|
| GUESS?, INC. | WC | WC 0152757-03 | 5/1/2022 | AZIC |
|  | GL | GLO 0152759-03 | 5/1/2022 | ZAIC |

**B.  Retrospective Premium Policy(ies)**

| Insured | Line of Business | Policy Number | Expiration Date | Issuing Company |
|---|---|---|---|---|
| GUESS?, INC. | WC | WC 0152758-03 | 5/1/2022 | ZAIC |

**C.  Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to the coverages provided under the Policy(ies):

1. The first **$350,000** under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

2. The first **$350,000** under WC coverage arising out of occupational disease payable to each affected employee.

3. The first **$350,000** under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

4. The first **$350,000** under EL coverage arising out of occupational disease payable to each affected employee.

5. The first **$150,000** for each occurrence, claim, offense, accident, act, error or omission or any other such similar event as defined or used in the policy for each of the coverages that involves Coverages A, B, C or any other coverage provided under the  Commercial General Liability Policy(ies).

6. With respect to 1 through 5 above, the amount of ALAE that You are obligated to pay Us will be determined as follows:

    ALAE is included within the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the ALAE excess of the Loss Limit.

**D. Deductible Policy(ies)**

1. Deductible Premium

   You are obligated to pay Us Deductible Premium.  The Deductible Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Deductible Policy. The Deductible Premium stated below is an estimated amount which will be adjusted and is payable to Us at the time We issue the premium audit bill.  In no event will the amount of the Deductible Premium be less than the Minimum Premium stated below.

| Policy(ies) | Exposure Base | Rate | Estimated Exposure | Deductible Premium | Minimum Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll including Retro states excluding stop gap | $0.150278 per $100 | $132,933,904 | $199,770 | $199,770 |
| GL | US Sales | $0.194872 per $1,000 | $585,000,000 | $114,000 | $114,000 |

**E. Retrospective Premium Policy(ies)**

1. Standard & Deposit Premiums – Retrospective Premium Policy(ies)

   You are obligated to pay Us the Deposit Premium.  The Deposit Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Retrospective Premium Policy.  In no event will the amount of Deposit Premium be less than the Deposit Premium amount stated below.

   The Standard Premium stated below is an estimated amount and is subject to audit. The premium audit billing will be deferred until We issue the first Retrospective Premium Adjustment billing.  You will pay the additional premium due Us within twenty (20) days of the billing date.

| Policy(ies) | Exposure Base | Standard Premium Rate | Estimated Exposure | Standard Premium | Deposit Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | As stated in policy | $841,826 | $6,831 | $0 |

2. Retrospective Premium Elements
   a. Basic Premium

| Estimate At Inception | | Adjustable at Audit | | |
|---|---|---|---|---|
| Basic Premium Amount | Estimated Exposure | Rate | Exposure Base | Basic Premium shall never be less than |
| $0 | $841,826 | $0.00 per $100 | Audited Payroll excluding stop gap | $0 |

   You are obligated to pay Us the adjusted Basic Premium amount times the Tax Multiplier.
   b. Tax Multiplier
      The Tax Multiplier is based on Our current rates and is not adjustable.

The following are the rates charged based on the state distribution of Your premium:

| Policy(ies) | Tax Multiplier |
|-------------|----------------|
| WC/EL       | 1.0328         |

c.  Terrorism Premium and CAT Premium

You are obligated to pay Us the adjusted amount for Terrorism Premium and CAT Premium upon Our issuance of the first Retrospective Premium Adjustment billing.

d.  Premium Surcharges and Other Special Charges

You are obligated to pay Us the adjusted amount for Premium Surcharges and Other Special Charges at each Retrospective Premium Adjustment billing.

3.  Earned Retrospective Premium Formula

For purposes of calculating the Earned Retrospective Premium, the following formula applies:

Formula:  {((IL + IALAE) x LCF*) + TPAF** + Basic Premium} x TM = ERP

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.
**TPAF paid by Us.

4.  Retrospective Premium Adjustment

a.  Retrospective Premium Adjustment Billings
You are obligated to pay Us each Retrospective Premium Adjustment billing.  We will calculate a Retrospective Premium Adjustment billing beginning with losses valued at the earlier of eighteen (18) months after the Specifications Effective Date or six (6) months after the expiration date of the Policy(ies) listed in section B. of these Specifications, and, at a minimum, annually thereafter.  Each Retrospective Premium Adjustment billing will be calculated as follows:

The sum of:
i.    Earned Retrospective Premium (ERP), plus
ii.   audited Terrorism Premium and CAT Premium, plus
iii.  Premium Surcharges and Other Special Charges.

Less the sum of the following:

v.    Billings for Deposit Premium for the Policy(ies) stated in Section E. 1., plus
vi.   Payments made within the Loss Limit(s), according to Our records, by the TPA, plus
vii.  Loss Billings by Us, plus
viii. Terrorism Premium and CAT Premium billings, plus
ix.   Prior Earned Retrospective Premium billings, plus
x.    the sum of Loss Reserves and ALAE Reserves times LCF*  all sums times the Tax Multiplier, plus
xi.   Premium Surcharges and Other Special Charges billings.

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.

DocuSign Envelope ID: 65C5C8E9-FEA2-415A-86EB-55D056E5AA4AD

At each Retrospective Premium Adjustment billing, You will pay the premium due Us within twenty (20) days of the billing date. Retrospective Premium Adjustment billings shall continue until We suspend billings when all losses have been paid.

**F. Combined Elements**

1. Terrorism Premium And Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program)

   a. You are obligated to pay Us a Terrorism Premium charge for risk of loss resulting from terrorism and Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program) and hereinafter referred to as CAT Premium.

   b. Terrorism Premium and CAT Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Policy .

   c. Terrorism Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill.  Terrorism Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing.

      i. The WC Terrorism Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

      ii. The GL Terrorism Premium is included in the GL Premium or the GL rate stated elsewhere in these Specifications and is subject to audit.

   d. CAT Premium applies with respect to WC Policy(ies) only.  CAT Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill.  CAT Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing. CAT Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

**G. Third Party Administrator ("TPA")**

At Your request, a TPA has been selected to perform claim handling and claim administration services.

1. The TPA is Gallagher Bassett Services, Inc.

2. We are ultimately responsible for these services.  Therefore, We reserve the right to terminate the TPA at Our discretion pursuant to the terms of Our agreement with the TPA.  We will endeavor to notify You of Our decision to terminate the TPA as soon as possible.  If the services of the TPA are terminated, You may select another Zurich approved TPA or You may select Zurich to perform claim handling and claim administration services.

3. You are obligated to pay the TPA for all TPAF.  If You fail to pay the TPA for any TPAF and the TPA bills Us, You are obligated to pay Us for the sums paid by Us to the TPA.  Unless otherwise stated on the invoice, this amount will be Due on Demand.

4. If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for an LCF of 1.12 as stated elsewhere in these Specifications.  Unless otherwise stated on the invoice, this amount will be Due on Demand.

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D0565EA4AD

### H. Loss Billings

1. The TPA will bill You directly for Paid Losses, Paid ALAE and TPAF. You are obligated to pay these sums directly to the TPA.

2. If for any reason We assume those payment obligations, or We assume the claim handling and administration services, We will bill You monthly.  You are obligated to pay Us for the following:

   With respect to Deductible Policy(ies),

   a.  Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,
   b.  times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,
   c.  less Recoveries within the Loss Limit(s) credited during the month,
   d.  plus the TPAF paid by Us.

   With respect to Retrospective Premium Policy(ies),

   a.  Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,
   b.  times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,
   c.  less Recoveries within the Loss Limit(s) credited during the [month/quarter],
   d.  plus the TPAF paid by Us,
   e.  times the Tax Multiplier.

Loss Billings shall continue until either i) We suspend billings when all losses have been paid or ii)  the conversion of the Loss Billings resulting in an alternate method of payment as may be provided for in the Loss Billing Conversion section of these Specifications with respect to Deductible Policy(ies) and the Retrospective Premium Adjustment section of these Specifications with respect to Retrospective Premium Policy(ies).

### I. Premium Surcharges and Other Special Charges

1. Premium Surcharges

   You are obligated to pay Us Premium Surcharges in addition to the Deposit Premiums. These sums are payable to Us as stated in the Policy(ies).

   You are obligated to pay Us for Premium Surcharges which apply in any jurisdiction in which exposure exists or where exposure develops under the Policy(ies).   Premium Surcharges are subject to change without prior notice.  Premium Surcharges will be billed by Us based upon rates according to applicable regulatory or statutory requirements.

   You will be billed and are obligated to pay Us for additional Premium Surcharges at the time We issue the premium audit billing for the Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at each Retrospective Premium Adjustment billing.

   The applicable Premium Surcharges may apply to, but are not limited to, the following: Deductible Premium, Standard Premium, Earned Retrospective Premium, Excess Premium, Terrorism Premium, CAT Premium and audited exposures.

2. Other Special Charges

   You are obligated to pay Us for Other Special Charges.  You will be billed for Other Special Charges at the time We issue the premium audit billing for Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at the time We issue each Retrospective Premium Adjustment billing unless otherwise required by law.  We will provide You with information

Z000056

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D056E5AA4AD

about the purpose of the charges and, as applicable, the amount of the charge and the application thereof.  You will be billed based upon the information provided.

**J.  Loss Fund**

1.  You are obligated to pay the Loss Fund to the TPA.  The TPA will bill You directly and hold and adjust the Loss Fund.

2.  If for any reason You fail to fund the TPA's Loss Fund requirements, You are obligated to pay Us an amount equal to the Loss Fund billed to Us by the TPA.

3.  If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for the Loss Fund as follows:

    a.  Paid Losses within the Loss Limit(s) and applicable Paid ALAE  for 12 months prior to the adjustment date,
    b.  times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,
    c.  divided by 12 equals the monthly average payment,
    d.      monthly average payment times 2.5 equals the adjusted Loss Fund,
    e.  Required/Amended Loss Fund less Loss Fund held equals the additional or return amount due.

4.  Adjustments of the Loss Fund will be computed, at a minimum, annually after the Specifications Effective Date. We may adjust the Loss Fund at any time We determine that the amount We require is greater than the Loss Fund amount on hand.

5.  At the time of each Loss Fund adjustment, payment by You will be due within twenty (20) days of the billing date; payment by Us will be credited to Your subsequent Loss Billing. When We have determined that We no longer require a Loss Fund, the remaining balance in the Loss Fund will be returned to You.

**K.  Collateral**

| | |
|---|---|
| Collateral on hand: | $1,400,000 |
| Adjustment: | $200,000 |
| Required/Amended Collateral amount: | $1,600,000 |

1.  The Required/Amended Collateral amount stated above is due on or before the Specifications Effective Date.  Collateral requirements will be reviewed annually, and We will provide Our annual analysis to You at Your request.  We reserve the right to require additional Collateral at any time We deem necessary to secure Your obligations to Us under the Program.

2.  The adjustment of the Collateral will include, but not be limited to, the sum of a. and b. below:

    a.  With respect to the Retrospective Premium Policy(ies):

        i.  Ultimate Retrospective Premium,
        ii.  less the sum of amounts billed within the Loss Limit(s) by the TPA,
        iii.  less the sum of amounts billed by Us for all deposit amounts, premium audits, Loss Billings and Retrospective Premium Adjustment billings.

    b.  With respect to the Deductible Policy(ies):

        i.  Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE,
        ii.  times the applicable LDF,

Z000057

DocuSign Envelope ID: 65C5C8E9-FFA2-415A-86EB-55D0566EAA4AD

iii.  times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,

iv.  plus the TPAF billed by Us,

v.  less the sum of amounts billed within the Loss Limit(s) by the TPA,

vi.  less the sum of amounts billed by Us for Loss Billings and TPAF.

3.  For the Policy(ies) stated in these Specifications, LDFs used by Us to compute Your Required/Amended Collateral obligation will be determined by Us, at our sole discretion, at the time of each Collateral adjustment.


## L.  Notices

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

| | |
|---|---|
| If to You: | Guess?, Inc. |
| Address: | 144 South Alameda Street<br>Los Angeles, CA 90021<br>Attention:  Todd Marumoto |
| Telephone: | 213-765-5788 |
| If to Us: | Zurich American Insurance Company |
| | American Zurich Insurance Company |
| Address: | 777 South Figueroa Street, Suite 3900<br>Los Angeles, CA 90017<br>Attention: George Gruff |
| Telephone: | 213-270-0863 |

Z000058

The parties have caused the Specifications, effective **May 1, 2021** to be signed by their duly authorized representatives.

**GUESS?, INC.**

By: _Todd Marumoto_

Title: VP Risk Management

Date: 7/26/2021

**ZURICH AMERICAN INSURANCE COMPANY**

By: _George Gruff_

Title: Underwriter

Date: 7/22/2021

**AMERICAN ZURICH INSURANCE COMPANY**

By: _George Gruff_

Title: Underwriter

Date: 7/22/2021

Z000059

**SPECIFICATIONS TO PAID DEDUCTIBLE AND
PAID LOSS RETROSPECTIVE AGREEMENT
BETWEEN
GUESS?, INC.
AND
AMERICAN ZURICH INSURANCE COMPANY ("AZIC")
ZURICH AMERICAN INSURANCE COMPANY ("ZAIC")**

**Ancillary Agreement Number:** 0152757

**Specifications Effective Date:** May 1, 2022

**A. Deductible Policy(ies)**

| Insured | Line of Business | Policy Number | Expiration Date | Issuing Company |
|---|---|---|---|---|
| GUESS?, INC. | WC | WC 0152757-04 | 5/1/2023 | AZIC |
| | GL | GLO 0152759-04 | 5/1/2023 | ZAIC |

**B. Retrospective Premium Policy(ies)**

| Insured | Line of Business | Policy Number | Expiration Date | Issuing Company |
|---|---|---|---|---|
| GUESS?, INC. | WC | WC 0152758-04 | 5/1/2023 | ZAIC |

**C. Loss Limit(s)**

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to the coverages provided under the Policy(ies):

1. The first **$350,000** under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

2. The first **$350,000** under WC coverage arising out of occupational disease payable to each affected employee.

3. The first **$350,000** under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

4. The first **$350,000** under EL coverage arising out of occupational disease payable to each affected employee.

5. The first **$150,000** for each occurrence, claim, offense, accident, act, error or omission or any other such similar event as defined or used in the policy for each of the coverages that involves Coverages A, B, C or any other coverage provided under the  Commercial General Liability Policy(ies).

6. With respect to 1 through 5 above, the amount of ALAE that You are obligated to pay Us will be determined as follows:

   ALAE is included within the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the ALAE excess of the Loss Limit.

**D. Deductible Policy(ies)**

1. Deductible Premium

You are obligated to pay Us Deductible Premium.  The Deductible Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Deductible Policy. The Deductible Premium stated below is an estimated amount which will be adjusted and is payable to Us at the time We issue the premium audit bill.  In no event will the amount of the Deductible Premium be less than the Minimum Premium stated below.

| Policy(ies) | Exposure Base | Rate | Estimated Exposure | Deductible Premium | Minimum Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll including Retro states excluding stop gap | $0.151156 per $100 | $165,544,479 | $250,230 | $225,207 |
| GL | US Sales | $0.194871 per $1,000 | $769,605,882 | $149,974 | $149,974 |

**E. Retrospective Premium Policy(ies)**

1. Standard & Deposit Premiums – Retrospective Premium Policy(ies)

You are obligated to pay Us the Deposit Premium.  The Deposit Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Retrospective Premium Policy.  In no event will the amount of Deposit Premium be less than the Deposit Premium amount stated below.

The Standard Premium stated below is an estimated amount and is subject to audit. The premium audit billing will be deferred until We issue the first Retrospective Premium Adjustment billing.  You will pay the additional premium due Us within twenty (20) days of the billing date.

| Policy(ies) | Exposure Base | Standard Premium Rate | Estimated Exposure | Standard Premium | Deposit Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | As stated in policy | $1,499,280 | $9,991 | $0 |

2. Retrospective Premium Elements
   a. Basic Premium

| Estimate At Inception | | Adjustable at Audit | | |
|---|---|---|---|---|
| Basic Premium Amount | Estimated Exposure | Rate | Exposure Base | Basic Premium shall never be less than |
| $0 | $1,499,280 | $0.00 per $100 | Audited Payroll excluding stop gap | $0 |

You are obligated to pay Us the adjusted Basic Premium amount times the Tax Multiplier.

   b. Tax Multiplier

The Tax Multiplier is based on Our current rates and is not adjustable.

Z000061

The following are the rates charged based on the state distribution of Your premium:

| Policy(ies) | Tax Multiplier |
|-------------|----------------|
| WC/EL | 1.0331 |

c.  Terrorism Premium and CAT Premium

You are obligated to pay Us the adjusted amount for Terrorism Premium and CAT Premium upon Our issuance of the first Retrospective Premium Adjustment billing.

d.  Premium Surcharges and Other Special Charges

You are obligated to pay Us the adjusted amount for Premium Surcharges and Other Special Charges at each Retrospective Premium Adjustment billing.

3.  Earned Retrospective Premium Formula

For purposes of calculating the Earned Retrospective Premium, the following formula applies:

Formula: $\{((IL + IALAE) \times LCF^*) + TPAF^{**} + \text{Basic Premium}\} \times TM = ERP$

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.
**TPAF paid by Us.

4.  Retrospective Premium Adjustment

a.  Retrospective Premium Adjustment Billings

You are obligated to pay Us each Retrospective Premium Adjustment billing.  We will calculate a Retrospective Premium Adjustment billing beginning with losses valued at the earlier of eighteen (18) months after the Specifications Effective Date or six (6) months after the expiration date of the Policy(ies) listed in section B. of these Specifications, and, at a minimum, annually thereafter.  Each Retrospective Premium Adjustment billing will be calculated as follows:

The sum of:
i.  Earned Retrospective Premium (ERP), plus
ii.  audited Terrorism Premium and CAT Premium, plus
iii.  Premium Surcharges and Other Special Charges.

Less the sum of the following:

v.  Billings for Deposit Premium for the Policy(ies) stated in Section E. 1., plus
vi.  Payments made within the Loss Limit(s), according to Our records, by the TPA, plus
vii.  Loss Billings by Us, plus
viii.  Terrorism Premium and CAT Premium billings, plus
ix.  Prior Earned Retrospective Premium billings, plus
x.  the sum of Loss Reserves and ALAE Reserves times LCF*  all sums times the Tax Multiplier, plus
xi.  Premium Surcharges and Other Special Charges billings.

*If We assume claim handling, the LCF stated in the TPA subsection of the Combined Elements will apply.

Z000062

At each Retrospective Premium Adjustment billing, You will pay the premium due Us within twenty (20) days of the billing date. Retrospective Premium Adjustment billings shall continue until We suspend billings when all losses have been paid.

**F. Combined Elements**

1. Terrorism Premium And Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program)

   a. You are obligated to pay Us a Terrorism Premium charge for risk of loss resulting from terrorism and Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program) and hereinafter referred to as CAT Premium.

   b. Terrorism Premium and CAT Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Policy .

   c. Terrorism Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill.  Terrorism Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing.

      i. The WC Terrorism Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

      ii. The GL Terrorism Premium is included in the GL Premium or the GL rate stated elsewhere in these Specifications and is subject to audit.

   d. CAT Premium applies with respect to WC Policy(ies) only.  CAT Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill.  CAT Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing. CAT Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

**G. Third Party Administrator ("TPA")**

At Your request, a TPA has been selected to perform claim handling and claim administration services.

1. The TPA is Gallagher Bassett Services, Inc.

2. We are ultimately responsible for these services.  Therefore, We reserve the right to terminate the TPA at Our discretion pursuant to the terms of Our agreement with the TPA.  We will endeavor to notify You of Our decision to terminate the TPA as soon as possible.  If the services of the TPA are terminated, You may select another Zurich approved TPA or You may select Zurich to perform claim handling and claim administration services.

3. You are obligated to pay the TPA for all TPAF.  If You fail to pay the TPA for any TPAF and the TPA bills Us, You are obligated to pay Us for the sums paid by Us to the TPA.  Unless otherwise stated on the invoice, this amount will be Due on Demand.

4. If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for an LCF of 1.12 as stated elsewhere in these Specifications.  Unless otherwise stated on the invoice, this amount will be Due on Demand.

Z000063

### H. Loss Billings

1. The TPA will bill You directly for Paid Losses, Paid ALAE and TPAF. You are obligated to pay these sums directly to the TPA.

2. If for any reason We assume those payment obligations, or We assume the claim handling and administration services, We will bill You monthly.  You are obligated to pay Us for the following:

   With respect to Deductible Policy(ies),

   a. Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,
   b. times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,
   c. less Recoveries within the Loss Limit(s) credited during the month,
   d. plus the TPAF paid by Us.

   With respect to Retrospective Premium Policy(ies),

   a. Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,
   b. times the LCF stated in the TPA subsection of the Combined Elements if We assume claim handling,
   c. less Recoveries within the Loss Limit(s) credited during the [month/quarter],
   d. plus the TPAF paid by Us,
   e. times the Tax Multiplier.

Loss Billings shall continue until either i) We suspend billings when all losses have been paid or ii)  the conversion of the Loss Billings resulting in an alternate method of payment as may be provided for in the Loss Billing Conversion section of these Specifications with respect to Deductible Policy(ies) and the Retrospective Premium Adjustment section of these Specifications with respect to Retrospective Premium Policy(ies).

### I. Premium Surcharges and Other Special Charges

1. Premium Surcharges

   You are obligated to pay Us Premium Surcharges in addition to the Deposit Premiums. These sums are payable to Us as stated in the Policy(ies).

   You are obligated to pay Us for Premium Surcharges which apply in any jurisdiction in which exposure exists or where exposure develops under the Policy(ies).   Premium Surcharges are subject to change without prior notice.  Premium Surcharges will be billed by Us based upon rates according to applicable regulatory or statutory requirements.

   You will be billed and are obligated to pay Us for additional Premium Surcharges at the time We issue the premium audit billing for the Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at each Retrospective Premium Adjustment billing.

   The applicable Premium Surcharges may apply to, but are not limited to, the following: Deductible Premium, Standard Premium, Earned Retrospective Premium, Excess Premium, Terrorism Premium, CAT Premium and audited exposures.

2. Other Special Charges

   You are obligated to pay Us for Other Special Charges.  You will be billed for Other Special Charges at the time We issue the premium audit billing for Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at the time We issue each Retrospective Premium Adjustment billing unless otherwise required by law.  We will provide You with information

Z000064

about the purpose of the charges and, as applicable, the amount of the charge and the application thereof.  You will be billed based upon the information provided.

## J.  Loss Fund

1.  You are obligated to pay the Loss Fund to the TPA.  The TPA will bill You directly and hold and adjust the Loss Fund.

2.  If for any reason You fail to fund the TPA's Loss Fund requirements, You are obligated to pay Us an amount equal to the Loss Fund billed to Us by the TPA.

3.  If the services of the TPA are terminated for any reason and We assume the claim handling and claim administration services, We will bill You for the Loss Fund as follows:

    a.  Paid Losses within the Loss Limit(s) and applicable Paid ALAE  for 12 months prior to the adjustment date,
    b.  times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,
    c.  divided by 12 equals the monthly average payment,
    d.      monthly average payment times 2.5 equals the adjusted Loss Fund,
    e.  Required/Amended Loss Fund less Loss Fund held equals the additional or return amount due.

4.  Adjustments of the Loss Fund will be computed, at a minimum, annually after the Specifications Effective Date. We may adjust the Loss Fund at any time We determine that the amount We require is greater than the Loss Fund amount on hand.

5.  At the time of each Loss Fund adjustment, payment by You will be due within twenty (20) days of the billing date; payment by Us will be credited to Your subsequent Loss Billing. When We have determined that We no longer require a Loss Fund, the remaining balance in the Loss Fund will be returned to You.

## K.  Collateral

| | |
|---|---|
| Collateral on hand: | $1,600,000 |
| Adjustment: | $0 |
| Required/Amended Collateral amount: | $1,600,000 |

1.  The Required/Amended Collateral amount stated above is due on or before the Specifications Effective Date.  Collateral requirements will be reviewed annually, and We will provide Our annual analysis to You at Your request.  We reserve the right to require additional Collateral at any time We deem necessary to secure Your obligations to Us under the Program.

2.  The adjustment of the Collateral will include, but not be limited to, the sum of a. and b. below:

    a.  With respect to the Retrospective Premium Policy(ies):

        i.  Ultimate Retrospective Premium,
        ii.  less the sum of amounts billed within the Loss Limit(s) by the TPA,
        iii.  less the sum of amounts billed by Us for all deposit amounts, premium audits, Loss Billings and Retrospective Premium Adjustment billings.

    b.  With respect to the Deductible Policy(ies):

        i.  Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE,
        ii.  times the applicable LDF,

   iii. times the LCF stated in the TPA subsection of the Combined Elements if We assume the claim handling,

   iv. plus the TPAF billed by Us,

   v. less the sum of amounts billed within the Loss Limit(s) by the TPA,

   vi. less the sum of amounts billed by Us for Loss Billings and TPAF.

3. For the Policy(ies) stated in these Specifications, LDFs used by Us to compute Your Required/Amended Collateral obligation will be determined by Us, at our sole discretion, at the time of each Collateral adjustment.

## L. Notices

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

If to You:   Guess?, Inc.

Address:   144 South Alameda Street
       Los Angeles, CA 90021
       Attention:  Todd Marumoto

Telephone:   213-765-5788

If to Us:   Zurich American Insurance Company

       American Zurich Insurance Company

Address:   777 South Figueroa Street, Suite 3900
       Los Angeles, CA 90017
       Attention: George Gruff

Telephone:   213-270-0863

Z000066

The parties have caused the Specifications, effective **May 1, 2022** to be signed by their duly authorized representatives.

**GUESS?, INC.**

By: _Todd Marumoto_

Title: VP Risk Management

Date: 6/21/2022

**ZURICH AMERICAN INSURANCE COMPANY**

By: _George Gruff_

Title: AVP

Date: 6/16/2022

**AMERICAN ZURICH INSURANCE COMPANY**

By: _George Gruff_

Title: AVP

Date: 6/16/2022

Z000067

# Exhibit 2

INTERNAL USE ONLY



# ZURICH

**Zurich North America**

www.zurichna.com

## INVOICE

Invoice Date 4/17/2025
Invoice Number RMI01000031206
Valuation Date 3/31/2025
Due Date 5/7/2025

**Total Amount Due 939,250.00**

| **Customer** | **Agent** | |
|---|---|---|
| GUESS? INC. | AON RISK INSURANCE SERVICES WEST, INC. | |
| 1444 SOUTH ALAMEDA STREET | 707 WILSHIRE BLVD. | |
| LOS ANGELES CA 90021 | SUITE 2600 | |
| | LOS ANGELES CA 90017 | |

------Payment Information------

- **Payment by mail:** Remit payment and this remittance advice to:

Zurich North America
8734 Paysphere Circle
Chicago, IL 60674

- **Payment electronically:** Use the following information to complete the electronic payment transaction. To ensure the payment is applied correctly and to avoid further collection activity, please e-mail or fax the wire remittance to: E-MAIL: C&RM_Wires@zurichna.com or FAX: 1-866-593-2775

| **Wire Procedures** | | **ACH Procedures** | |
|---|---|---|---|
| Domestic | International | | |
| Bank: Bank of America | Swift: BOFAUS3N | Bank: Bank of America | |
| Bank Address: 100 West 33rd Street New York, NY 10001 | Bank: Bank of America | Bank Address: 100 West 33rd Street New York, NY 10001 | |
| ABA Bank Routing #  | Bank Address: 100 West 33rd Street New York, NY 10001 | ABA Bank Routing # | |
| Beneficiary: Zurich American Insurance Co. Collections 1400 American Lane Schaumburg, IL 60196 | Beneficiary: Zurich American Insurance Co. Collections 1400 American Lane Schaumburg, IL 60196 | Beneficiary: Zurich American Insurance Co. Collections 1400 American Lane Schaumburg, IL 60196 | |
| Beneficiary Account#: | Beneficiary Account#: | Beneficiary Account#: | |
| Reference: RMI01000031206 | Reference: RMI01000031206 | Reference: RMI01000031206 | |

**CONFIDENTIAL**

INTERNAL USE ONLY



**ZURICH**

Zurich North America

www.zurichna.com

**INVOICE**

Invoice Date 4/17/2025
Invoice Number RMI01000031206
Valuation Date 3/31/2025
Due Date 5/7/2025

| | |
|---|---|
| **Total Amount Due $** | **939,250.00** |

**Customer**

GUESS? INC.
1444 SOUTH ALAMEDA STREET
LOS ANGELES CA 90021

**Agent**

AON RISK INSURANCE SERVICES WEST, INC.
707 WILSHIRE BLVD.
SUITE 2600
LOS ANGELES CA 90017

| Coverage / Program Type | | Claim Number | Claim Detail | Policy Period | Total Losses | | Deductible Due | |
|---|---|---|---|---|---|---|---|---|
| GENERAL LIABILITY | Deductible | 9690566197 | 3 UMPG SONGS | 5/1/2018 | $ | 12,250.00 | | 12,250.00 |
| GENERAL LIABILITY | Deductible | 9690576059 | 2 UMPG SONGS | 5/1/2019 | $ | 27,000.00 | | 27,000.00 |
| GENERAL LIABILITY | Deductible | 9690576072 | 14 UMG SONGS | 5/1/2020 | $ | 387,000.00 | | 150,000.00 |
| GENERAL LIABILITY | Deductible | 9690585662 | 22 UMPG SONGS | 5/1/2020 | $ | 221,000.00 | | 150,000.00 |
| GENERAL LIABILITY | Deductible | 9690576073 | 35 UMG SONGS | 5/1/2021 | $ | 966,000.00 | | 150,000.00 |
| GENERAL LIABILITY | Deductible | 9690585661 | 34 UMPG SONGS | 5/1/2021 | $ | 322,000.00 | | 150,000.00 |
| GENERAL LIABILITY | Deductible | 9690566163 | 64 UMG SONGS | 5/1/2022 | $ | 1,000,000.00 | | 150,000.00 |
| GENERAL LIABILITY | Deductible | 9690585660 | 72 UMPG SONGS | 5/1/2022 | $ | 938,000.00 | | 150,000.00 |

INTERNAL USE ONLY



# ZURICH

Zurich North America

www.zurichna.com

## INVOICE

Invoice Date 5/2/2025

Invoice Number RM01000003I283

Valuation Date 4/30/2025

Due Date 5/22/2025

**Total Amount Due 290,000.00**

| Customer | Agent |
|---|---|
| GUESS? INC. | AON RISK INSURANCE SERVICES WEST, INC. |
| 1444 SOUTH ALAMEDA STREET | 707 WILSHIRE BLVD. |
| LOS ANGELES CA 90021 | SUITE 2600 |
| | LOS ANGELES CA 90017 |

--------------------------Payment Information--------------------------

- **Payment by mail:** Remit payment and this remittance advice to:

  Zurich North America
  8734 Paysphere Circle
  Chicago, IL 60674

- **Payment electronically:** Use the following information to complete the electronic payment transaction. To ensure the payment is applied correctly and to avoid further collection activity, please e-mail or fax the wire remittance to: E-MAIL: C&RM_Wires@zurichna.com or FAX: 1-866-593-2775

## Wire Procedures

**Domestic**

Bank: Bank of America
Bank Address: 100 West 33rd Street
New York, NY 10001
ABA Bank Routing # [Confidential]
Beneficiary: Zurich American Insurance Co.
Collections
1400 American Lane
Schaumburg, IL 60196
Beneficiary Account#: [Confidential]
Reference: RM01000003I283

**International**

Swift: BOFAUS3N
Bank: Bank of America
Bank Address: 100 West 33rd Street
New York, NY 10001
Beneficiary: Zurich American Insurance Co.
Collections
1400 American Lane
Schaumburg, IL 60196
Beneficiary Account#: [Confidential]
Reference: RM01000003I283

## ACH Procedures

Bank: Bank of America
Bank Address: 100 West 33rd Street
New York, NY 10001
ABA Bank Routing # [Confidential]
Beneficiary: Zurich American Insurance Co.
Collections
1400 American Lane
Schaumburg, IL 60196
Beneficiary Account#: [Confidential]
Reference: RM01000003I283

**CONFIDENTIAL**

INTERNAL USE ONLY



**ZURICH**

Zurich North America

www.zurichna.com

## INVOICE

Invoice Date 5/2/2025
Invoice Number RMI01000031283
Valuation Date 4/30/2025
Due Date 5/22/2025

| Customer | | Agent | |
|---|---|---|---|
| GUESS? INC. | | AON RISK INSURANCE SERVICES WEST, INC. | |
| 1444 SOUTH ALAMEDA STREET | | 707 WILSHIRE BLVD. | |
| LOS ANGELES CA 90021 | | SUITE 2600 | |
| | | LOS ANGELES CA 90017 | |

**Total Amount Due $**   **290,000.00**

| Coverage / Program Type | | Claim Number | Claim Detail | Policy Period | Total Losses | Deductible Due |
|---|---|---|---|---|---|---|
| **GENERAL LIABILITY** | Deductible | 9690546022 | GRIFFIN PATRICK | 5/1/2022 | $ 175,000.00 | 150,000.00 |
| **GENERAL LIABILITY** | Deductible | 9690585658 | STAVNES THOMAS | 5/1/2022 | $ 115,000.00 | 115,000.00 |
| **GENERAL LIABILITY** | Deductible | 9690585659 | RONN ROBIN | 5/1/2022 | $ 25,000.00 | $ 25,000.00 |

# EXHIBIT B

**BARNES & THORNBURG LLP**
David P. Schack (SBN 106288)
Matthew B. O'Hanlon (SBN 253648)
Hira Yoshihara-Saint (SBN 347012)
2029 Century Park East, Suite 300
Los Angeles, CA 90067-3012
Telephone:  310-284-3880
Facsimile:   310-284-3894

Attorneys for Respondent Guess?, Inc.

AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN ZURICH INSURANCE COMPANY,<br><br>　　　　　　　Claimants,<br><br>　　　v.<br><br>GUESS?, INC.,<br><br>　　　　　　　Respondent. | AAA Case No. 01-25-0004-2076<br><br>**RESPONSE OF GUESS?, INC. TO DEMAND FOR ARBITRATION** |

## ANSWER

Respondent Guess?, Inc. ("Guess") hereby responds to Claimants Zurich American Insurance Company and American Zurich Insurance Company's (collectively, "Zurich") Demand for Arbitration (the "Demand") as follows:

### GENERAL DENIAL

In response to the Demand, Guess submits this general denial and hereby denies generally and specifically each and every allegation contained in the Demand, and further denies that Zurich is entitled to any relief or has been injured in the amount or manner alleged or in any other manner whatsoever. Additionally, Guess asserts the following affirmative defenses.

### AFFIRMATIVE DEFENSES

Guess asserts the following affirmative defenses, each as a separate and distinct affirmative defense. To the extent Guess discovers additional affirmative defenses during the course of the arbitration proceeding, Guess reserves the right to plead such additional affirmative defenses. Insofar as any of the following expresses a denial of an element of the claims alleged against Guess, such expression is in no way intended as a concession that Zurich is relieved of its burden to prove each and every element of any such claims.

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

Guess alleges that the Demand fails to state facts sufficient to constitute a cause of action against Guess.

### SECOND AFFIRMATIVE DEFENSE

(Prematurity)

Guess alleges that the Demand is premature in that no determination has been made that the policies under which Zurich claims that deductibles are due and owing apply to the subject claims. This arbitration should be stayed in favor of separate litigation seeking to determine Zurich's coverage obligations for the subject claims which obligations are outside the jurisdiction of the arbitrator.

**THIRD AFFIRMATIVE DEFENSE**

(Unclean Hands and Related Equitable Principles)

Guess alleges that by reason of the conduct of Zurich, the Demand against Guess is barred, in whole or in part, by the doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

(Estoppel)

Guess alleges that by reason of the conduct of Zurich, the Demand against Guess is barred, in whole or in part, by the doctrine of estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

(Waiver)

Guess alleges that the Demand is barred by the doctrine of waiver.

**SIXTH AFFIRMATIVE DEFENSE**

(Good Faith Defenses)

Guess alleges that it has good faith defenses, based in law and/or fact, which if successful would preclude any recovery by Zurich against Guess based on the allegations of the Demand.

**SEVENTH AFFIRMATIVE DEFENSE**

(Lack of Substantial Performance and Material Breach on the Part of Zurich)

Guess alleges that Zurich is precluded from obtaining the relief sought in the Demand, either in whole or in part, because Zurich has failed to substantially perform, and is in material breach of, contractual obligations, terms, conditions and duties, thereby precluding the relief sought.

**EIGHTH AFFIRMATIVE DEFENSE**

(Failure to Satisfy Conditions Precedent)

Guess alleges that the Demand is barred because Zurich failed to satisfy certain conditions precedent.

**NINTH AFFIRMATIVE DEFENSE**

(Lack of Standing)

Guess alleges that the Demand is barred because American Zurich Insurance Company did not issue the policies at issue and thus lacks standing and/or does not constitute the real party in

interest to bring the claims asserted in the Demand.

### TENTH AFFIRMATIVE DEFENSE

(Unjust Enrichment)

Guess alleges that the Demand is barred because recovery thereon would result in unjust enrichment.

### ELEVENTH AFFIRMATIVE DEFENSE

(Ratification/Consent)

Guess alleges that the Demand is barred because Zurich acknowledged, ratified, consented to and acquiesced in the alleged acts or omissions, if any, of Guess, thus barring Zurich from any relief as prayed for in the Demand.

### TWELFTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

Guess alleges that Zurich has failed to minimize or avoid any and all damages allegedly caused to it by Guess, the existence of which Guess expressly denies.  Any damages that may be recoverable by Zurich should therefore be denied or reduced accordingly.

### THIRTEENTH AFFIRMATIVE DEFENSE

(Bad Faith Conduct)

Guess alleges that the relief sought is barred by Zurich's bad faith conduct and its breach of the implied covenant of good faith and fair dealing.  This conduct and breaches are or will be the subject of separate litigation, and the arbitrator lacks jurisdiction over such claims.   As such, this arbitration should be stayed until such claims are adjudicated in court in a separate forum.

### FOURTEENTH AFFIRMATIVE DEFENSE

(Laches)

Guess alleges that that Zurich has lost any right to relief against Guess through laches, which has resulted in substantial prejudice to Guess.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Terms and Conditions of Zurich Policies)

Guess alleges that it has various defenses based upon the terms, conditions, and provisions of the insurance policies and other claimed agreements under which Zurich seeks relief.

## SIXTEENTH AFFIRMATIVE DEFENSE

(Setoff and Recoupment)

Guess alleges that the Demand is barred by the doctrines of setoff and recoupment which will be litigated outside of arbitration and in separate forum. The arbitrator lacks jurisdiction over such claims by Guess against Zurich. As such, this arbitration should be stayed until such claims are adjudicated in court in a separate forum.

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Beyond the Scope of Arbitration Clause)

Zurich seeks to arbitrate claims and issues beyond the scope of the arbitration clause and, as such, those claims and issues are not arbitrable. The arbitrator should decline to arbitrate all such claims and issues.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL AFFIRMATIVE DEFENSES

Guess has not knowingly and intentionally waived any applicable affirmative defenses and reserves the right to assert and rely on any such other applicable affirmative defenses as any become available or apparent during the conduct of discovery.

WHEREFORE, Guess requests that the arbitrator stay this arbitration, and after conclusion of the stay, Guess prays for judgment as follows:

1.    That Zurich take nothing by the Demand;

2.    That a Final Award be entered in Guess' favor and against Zurich;

3.    For costs of suit incurred herein; and

/ / /

/ / /

/ / /

4.    For such other and further relief as the Arbitrator may deem just and proper.

**BARNES & THORNBURG LLP**

Dated:  September 24, 2025                    By: _Matthew O'Hanlon_
                                             David P. Schack
                                             Matthew B. O'Hanlon
                                             Hira Yoshihara-Saint
                                             Attorneys for Respondent Guess?, Inc.

RESPONSE OF GUESS?, INC. TO DEMAND FOR ARBITRATION

1

## PROOF OF SERVICE

2

3

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and
4
not a party to the within action; my business address is 2029 Century Park East, Suite 300, Los
Angeles, CA 90067.

5
      On the date set forth below, I served the foregoing document(s):

6

### RESPONSE OF GUESS?, INC. TO DEMAND FOR ARBITRATION

7

on the interested parties in this action as follows:

8

      Julie Young                     Julie E. Collins
9
      julie.young@troutman.com      (JulieCollins@adr.org)
      Brandon Calderon
10
      brandon.calderon@troutman.com
      TROUTMAN PEPPER LOCKE

11

12

13    ☒    **BY AAA WEBFILE:**  I caused the foregoing document to be served via electronic service
on the recipients above via AAA WebFile.
14

15    ☒    **STATE**:  I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

16

Executed on **September 24, 2025**, at Los Angeles, California.
17

18

                        Matthew O'Hanlon
19
                        Matthew B. O'Hanlon

20

21

22

23

24

25

26

27

28

49054493.2